906 P.2d 150

STATE of Idaho, Plaintiff–Respondent,

v.

James Robert Lee MOORE, Defendant–Appellant.

No. 21662.

Court of Appeals of Idaho.

Nov. 20, 1995.

G. LaMarr Kofoed, Fruitland, for appellant.

Alan G. Lance, Attorney General; Myrna A.I. Stahman, Deputy Attorney General, Boise, for respondent.

LANSING, Judge

On January 20, 1994, James Robert Lee "Bobby" Moore shot and killed Ronald Wade Feldner, a New Plymouth police officer. Moore pleaded guilty to first degree murder, I.C. §§ 18–4001, –4002, –4003(b). Although Moore was fourteen years old at the time of the offense, he was prosecuted and sentenced as an adult pursuant to I.C. § 16–1806A. On appeal Moore contends that his sentence of twenty-five years to life violates the constitutional ban on cruel and unusual punishment and represents an abuse of the trial court's discretion.[1] We affirm.

The following recitation of facts is drawn directly from the district court's colloquy at sentencing:

Because the defendant has entered a guilty plea to the charges, the record of the incident giving rise to these charges is found mainly in the police reports and in the reports of police interviews with the defendant, the other people who were with him on the early morning hours of January 20th, 1994, and interviews with associates and companions of the defendant.

The record, and particularly the statement made by the defendant, establishes that sometime prior to midnight on the 19th day of January, 1994, the defendant and two companions, stole a 1969 Volkswagen which they drove to New Plymouth. Their purpose in going to New Plymouth was to see a girl friend of one of the youths. They decided to wait at the high school until the following morning and talk to her when she came to school. At approximately 2:30 a.m., Officer Feldner saw the car parked on the school grounds and went to check on it. He approached the car and asked the defendant, who was driving the automobile, for his license and registration. He was given the registration which Moore found under the seat in the car. Officer Feldner then went back to his car and radioed his dispatcher with the information on the registration and was informed that the automobile had been reported as stolen by the owner. The defendant heard the radio transmission when the dispatcher informed the defendant [sic] that the car was stolen. It is not clear from the record whether Bobby Moore decided to shoot the officer when he asked for the registration, or when he heard the radio transmission. In either event, when Officer Feldner walked back to the Volkswagen and asked the occupants to step out of the car the defendant shot Officer Feldner four times with a .25 calibre pistol from point blank range. Officer Feldner died there in the parking lot of the school grounds.

## A. The Sentence Was Not Cruel and Unusual Punishment

■ We consider first Moore's contention that his sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment to the United States Constitution and Art. I, § 6 of the Idaho Constitution. Moore argues for application of the three-part proportionality analysis set forth in *So-*

---

1. Moore also pleaded guilty to grand theft, I.C. §§ 18–2403(4), 18–2407, and was sentenced to a five year determinate period of incarceration to run concurrent with the sentence for first degree murder. Moore takes no appeal from this conviction or sentence.

*lem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). This analysis would require the court to consider (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions. Moore fails to recognize, however, that *Solem* is superseded by the United States Supreme Court's more recent decision in *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Our Supreme Court had occasion in *State v. Brown,* 121 Idaho 385, 825 P.2d 482 (1992), to consider the extent to which the *Solem* analysis remains operative after *Harmelin.* After considering the separate opinions in *Harmelin,* none of which commanded a majority, the Idaho Supreme Court concluded that *Harmelin,* "seriously erodes the three-step proportionality analysis in *Solem.*" *Brown,* 121 Idaho at 394, 825 P.2d at 490. The Court then continued:

> Following the opinion of Justice Kennedy, in which Justices O'Connor and Souter joined, we first must make a threshold comparison of the crime committed and the sentence imposed to determine whether the sentence leads to an inference of gross disproportionality. [501] U.S. at [1004–06], 111 S.Ct. at 2707.

.    .    .    .    .

In [*State v. Broadhead,* [120 Idaho 141, 814 P.2d 401 (1991) ] we relied on *State v. Evans,* 73 Idaho 50, 245 P.2d 788 (1952)], which held that under our state constitution a criminal sentence is cruel and unusual punishment only when it is "out of proportion to the gravity of the offense committed, and such as to shock the conscience of reasonable [people]." *Broadhead,* 120 Idaho 141, 148, 814 P.2d 401, 408. This traditional Idaho constitutional rule focusing on the gravity of the offense is well established and appropriate and is essentially equivalent to the "grossly disproportionate" test used by Justice Kennedy's opinion in *Harmelin.*

.    .    .    .    .

We limit our proportionality analysis to death penalty cases and, under the Idaho Constitution as contemplated in *State v.*

*Evans,* to those cases which are "out of proportion to the gravity of the offense committed" in the cruel and unusual punishment setting similar to the "grossly disproportionate" analysis of the eighth amendment urged by Justices Kennedy, O'Connor, and Souter in *Harmelin.* The lack of objective standards for evaluating differing terms of imprisonment, *see Harmelin,* [501 U.S. at 999–1001], 111 S.Ct. at 2704–05, gives proportionality review outside these two limited areas the potential of essentially allowing, if not requiring, this Court to second guess the trial court's discretionary determination of the criminal sentence that best fits the criminal defendant and the crime within the reasonable limits of the sentencing options.

*Brown,* 121 Idaho at 394, 825 P.2d at 491. *See also State v. Matteson,* 123 Idaho 622, 626, 851 P.2d 336, 340 (1993). Applying this guideline from *Brown,* we must make a threshold comparison of Moore's crime and the sentence imposed to determine whether the sentence leads to an inference of gross disproportionality. For purposes of this analysis, we treat the fixed portion of the sentence, twenty-five years, as the term of confinement. *Id.*

■ Moore argues that in conducting this analysis, consideration must be given to the youth and immaturity of the offender, a proposition with which we agree. In *Thompson v. Oklahoma,* 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988), the United States Supreme Court held that the death penalty constituted cruel and unusual punishment for a fifteen-year-old convicted of first degree murder. In a plurality opinion in which three other justices joined, Justice Stevens stated:

> [T]he Court has already endorsed the proposition that less culpability should attach to a crime committed by a juvenile than to a comparable crime committed by an adult. The basis for this conclusion is too obvious to require extensive explanation. Inexperience, less education, and less intelligence make the teenager less able to evaluate the consequences of his or her conduct while at the same time he or

she is much more apt to be motivated by mere emotion or peer pressure than is an adult. The reasons why juveniles are not trusted with the privileges and responsibilities of an adult also explain why their irresponsible conduct is not as morally reprehensible as that of an adult.

*Id.* at 835, 108 S.Ct. at 2688.

■ After considering Moore's age and the nature and circumstance of his crime, however, we do not find that a twenty-five year term of confinement leads to an inference of gross disproportionality. Moore killed another human being by shooting the victim four times at point-blank range without any provocation. The utter disregard for human life demonstrated in the commission of this crime, coupled with the fact that it was committed against a law enforcement officer, might well have led to imposition of the death penalty or a fixed life sentence if the perpetrator had been an adult. *See* I.C. §§ 18–4004 and 19–2515. Under these circumstances, even in view of Moore's youth, we cannot say that the sentence is out of all proportion to the gravity of the offense or such as to shock the conscience of reasonable people. Consequently, it is unnecessary to conduct any further proportionality review. *Brown,* 121 Idaho at 394, 825 P.2d at 491.

**B. The District Court Did Not Abuse its Discretion in Sentencing**

■ Moore next contends that his sentence, even if not violative of constitutional standards, is excessive and unreasonable. When such a challenge to a sentence is presented on appeal, we review the sentence for an abuse of the trial court's discretion. *State v. Brown,* 121 Idaho at 393, 825 P.2d at 490; *State v. Broadhead,* 120 Idaho 141, 814 P.2d 401 (1991), *overruled on other grounds by Brown,* 121 Idaho at 394, 825 P.2d at 491; *State v. Wolfe,* 99 Idaho 382, 582 P.2d 728 (1978). We conduct an independent examination of the record giving attention to the nature of the offense and the character of the offender. *State v. Young,* 119 Idaho 510, 511, 808 P.2d 429, 430 (Ct.App.1991); *State v. Reinke,* 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982). The reasonableness of the term of confinement chosen by the sentencing court must be measured against the sentencing goals of protecting society, deterrence, rehabilitation and retribution. *State v. Espinoza,* 127 Idaho 194, 196, 898 P.2d 1105, 1107 (Ct.App.1995); *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App.1982).

■ The determinate portion of Moore's sentence, twenty-five years, is treated as the term of confinement for purposes of appellate review. *State v. Kysar,* 116 Idaho 992, 999, 783 P.2d 859, 866 (1989); *State v. Sanchez,* 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989). We will find that this sentence was an abuse of the trial court's discretion only if, in light of the governing criteria, the sentence was excessive under any reasonable view of the facts. *State v. Small,* 107 Idaho 504, 505, 690 P.2d 1336, 1337 (1984). As we noted in *Toohill,* sentencing decisions cannot be made with precision. Therefore, where reasonable minds might differ as to the propriety of the term of confinement, the discretion vested in the sentencing court will be respected. *Toohill,* 103 Idaho at 568, 650 P.2d at 710.

■ Moore acknowledges the foregoing standards for sentence reviews, but argues that where a juvenile is sentenced as an adult pursuant to I.C. § 16–1806A, the sentencing goals of protection of society, deterrence, rehabilitation and retribution should be modified to include consideration of the best interests of the child. This same issue was presented to our state Supreme Court in *Broadhead.* The Court there held that, where a juvenile has been prosecuted as an adult, the appropriate time to take into account the juvenile's best interests with respect to sentencing is in deciding whether to sentence the defendant as an adult under I.C. § 16–1806A(3) or to utilize the juvenile sentencing options presented in the Youth Rehabilitation Act, I.C. § 16–1814. *Broadhead,* 120 Idaho at 146, 814 P.2d at 406. The district court in this case decided to sentence Moore as an adult. Moore does not contend there was any error in that decision nor does the record on appeal indicate that he ever requested that the court impose sentence pursuant to the Youth Rehabilitation Act. Therefore, no error has been shown with respect to the district court's consideration of the best interests of Bobby Moore.

Although the best interest of the child is not one of the goals of sentencing to be considered when a juvenile is sentenced as an adult, a juvenile defendant's age is one of the many circumstances that a sentencing court may and should consider in fashioning an appropriate sentence. *Broadhead,* 120 Idaho at 146, 814 P.2d at 406. The district court here did consider Bobby Moore's age as a mitigating factor and one bearing upon the goal of rehabilitation. The district court found, however, that the goals of deterrence and punishment were also very important considerations in this case. The evidence before the court at sentencing justified the court's focus on those goals. By the time of his arrest for Officer Feldner's murder, Bobby Moore had compiled a remarkable record of offenses for one so young. He had been previously charged with burglary (seven times), grand theft (four times), petit theft (eight times), malicious injury to property (seven times), trespassing, disturbing the peace, disturbing the educational process, curfew violations, obstructing an officer, unlawful entry, and battery. Although many of the foregoing charges were ultimately dismissed, in juvenile proceedings Moore had admitted to the commission of at least seven felonies. He had been committed to juvenile detention and had been placed on probation many times.

Evidence presented at sentencing indicated that Moore's act in shooting Officer Feldner was not just a sudden, uncontemplated and impulsive act. Interviews with four of Moore's acquaintances indicated that he had talked about wanting to kill someone, especially a police officer. Moore's statements to the police and to the presentence investigator indicated that he was obsessed with the need to be respected by his peers and was motivated to shoot Officer Feldner, in part, by a desire to make a name for himself among his companions. Moore regularly carried a handgun, and he had personally modified the pistol used in this offense so that it would fire as an automatic weapon. Moore also carried ammunition modified so that the bullets would spread on impact, causing more damage.[2]

A psychologist who evaluated Moore reported that he was impulsive, responding with little forethought for the consequences of his behavior, and that Moore typically releases his anger and hostility through aggressive and violent behavior. It was the psychologist's opinion that Moore's pattern of criminal behavior was well-entrenched, with little probability for improvement, and that Moore presented a high risk of reoffense. As a result of his juvenile offenses, Moore had been receiving out-patient therapy for a number of years without apparent progress. The psychologist concluded that Moore would be "quite resistant to change from a therapeutic standpoint." On this evidence, the district court found that while the possibility of Moore's rehabilitation in the distant future cannot be excluded, it is not a realistic possibility at present nor for the foreseeable future.

The fashioning of sentences for offenders who are as young as Bobby Moore, but who have committed grievous crimes, is among the most difficult tasks facing any court. For a judge charged with this responsibility, there arises a natural and humane concern to attempt to salvage the life of one so young. Competing with this concern, however, is the obligation of the court to protect society from dangerous criminals, to assure that heinous crimes are adequately punished, and to deter such conduct. Although the sentence imposed is undoubtedly stringent for one so young, in view of the evidence before the district court regarding the high likelihood of reoffense by Moore and the limited potential for his rehabilitation, we cannot say that the sentence imposed was excessive under any reasonable view of the facts.

## C. Conclusion

The sentence imposed upon Bobby Moore for first degree murder is affirmed.

WALTERS, C.J., and PERRY, J., CONCUR.

---

**2.** It is unclear from the record whether such modified bullets killed Officer Feldner.