133 P.3d 1246

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Michael FISCH, Defendant–Respondent.**

No. 31388.

Court of Appeals of Idaho.

Jan. 31, 2006.

Review Denied May 9, 2006.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for appellant.

Molly J. Huskey, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for respondent.

LANSING, Judge.

Michael Fisch was convicted of and was sentenced for two counts of lewd conduct with a minor. Subsequently, he filed a motion for sentence reductions and requested that the court authorize a psychosexual evaluation, to be conducted at Fisch's expense, for the court's consideration on the question of sentence modification. The court authorized the psychosexual evaluation but, due to various obstacles, the evaluation was not conducted for many months. Ultimately, after securing the psychosexual evaluation report, and more than thirteen months after entry of the judgment of conviction, the district court granted Fisch's motion by reducing his sentence. The State now appeals, contending that, through the passage of time, the district court lost jurisdiction to grant Fisch's motion for a sentence modification.

## I.

## BACKGROUND

Fisch pleaded guilty to two counts of lewd conduct with a minor under sixteen, Idaho Code § 18–1508, for molesting his daughter. A psychosexual evaluation was performed for purposes of sentencing, and on September 8, 2003, the district court imposed concurrent unified sixteen-year sentences with three-year determinate terms. On December 23, 2003, Fisch filed a timely motion pursuant to Idaho Criminal Rule 35 to reduce the sentence. In January 2004, he asked the court to authorize a second psychosexual evaluation, at Fisch's expense, to help him show why his sentence should be reduced. The district court granted this request on February 18, 2004.

The court initially scheduled a hearing on Fisch's Rule 35 motion for April 5, 2004, but at that hearing learned that the evaluation may not have been conducted. Fisch's counsel reported that he did not know the status

of the matter because Fisch had lost telephone privileges. The prosecutor urged the district court to just rule on the Rule 35 motion without awaiting the report. The district court declined to proceed as urged by the prosecutor and instead stated that, having authorized the evaluation, the court wanted to see the report before proceeding. A follow-up status conference was scheduled for April 22, at which time Fisch's attorney reported that, for unknown reasons, the prison had canceled Fisch's appointment with the evaluator. At the next conference, held May 27, 2004, the parties indicated that the evaluation still had not been performed because there was some confusion as to whether Fisch could meet with an evaluator while in segregated custody. The court scheduled the matter for yet another status conference on June 28, but later continued the conference to July 22 because the evaluator's schedule precluded him from completing the work before mid-July. On July 22, the court learned that the evaluation had been stalled because the State had frozen Fisch's funds and the evaluator was unwilling to proceed until he was paid. Fisch indicated that he was trying to raise the money, but, being incarcerated, was having difficulty doing so. To remedy this, the court authorized expenditure of $1,000 of county funds to cover the evaluator's fees. Fisch's counsel also noted that, as an additional complicating factor, the Department of Correction had recently moved Fisch from the state prison facility in Boise to the one in Orofino, making it more difficult for Fisch to be seen by the Boise-based evaluator.

On September 13, the court granted another continuance because the evaluator had required an additional $750 beyond the $1,000 that the judge had authorized. Although Fisch had been able to raise the additional funds, because of the delay and the evaluator's policy requiring checks to clear before proceeding, the evaluation had not yet been completed. Fisch had an appointment to meet the evaluator in Boise later that week, however, so the court ordered the State to transport Fisch from Orofino. Four days later, on September 17, the court granted a final continuance because the Depart-

ment of Correction had failed to transport Fisch in time for his appointment.

On October 14, 2004, the district court finally received the completed evaluation, which concluded that Fisch was not a violent sexual predator and presented little risk of re-offending. It stated that he had neither a sexual obsession nor a psychopathic personality, although he had antisocial and narcissistic personality features, as well as adult attention deficit disorder. Based in part on this report, the district court granted the Rule 35 motion and reduced Fisch's sentence to ten years with two years determinate. The order granting the Rule 35 motion was entered on October 25, 2004, eleven days after the court received the report, but thirteen months after the judgment of conviction.

The State appeals, arguing that during the thirteen-month delay, the court lost jurisdiction to grant Fisch's motion.

## II.

## ANALYSIS

On a strict reading, I.C.R. 35 may appear to require that a trial court rule on a motion for reduction of a sentence within 120 days after the judgment of conviction. It is well settled, however, that a court does not lose jurisdiction to act upon a timely motion under Rule 35 merely because the 120–day period expires before the judge reasonably can consider the motion and render a decision. *State v. Chapman*, 121 Idaho 351, 353, 825 P.2d 74, 76 (1992); *State v. Torres*, 107 Idaho 895, 898, 693 P.2d 1097, 1100 (Ct.App. 1984). Rather, district courts are allowed to "retain jurisdiction over timely-filed motions for a 'reasonable time' beyond the [120–day] deadline." *Chapman*, 121 Idaho at 353, 825 P.2d at 76. This "reasonable time" limitation for the trial court to act serves to insure that the court "does not usurp the responsibilities of parole officials by retaining jurisdiction indefinitely and acting on the motion in light of the movant's conduct in prison." *Id.* (quoting *United States v. Smith*, 650 F.2d 206, 208 (9th Cir.1981)).

In determining whether the court had jurisdiction at a date beyond the 120–day

time limit, we consider whether the record shows a legitimate cause for the delay and whether that delay was reasonable in light of the rationales underlying the time limit. *State v. Tranmer*, 135 Idaho 614, 616, 21 P.3d 936, 938 (Ct.App.2001); *State v. Simpson*, 131 Idaho 196, 197, 953 P.2d 636, 637 (Ct. App.1998). Examples of situations that may justify a delay beyond the 120–day limit include a judge's absence due to illness, vacation or service on another matter; the judge's preoccupation with a protracted trial of another case; the need to summon witnesses or procure a medical examination, *Chapman*, 121 Idaho at 353, 825 P.2d at 76 (citing *United States v. Stollings*, 516 F.2d 1287, 1288 (4th Cir.1975)); the retirement of the original sentencing judge, *Torres*, 107 Idaho at 898, 693 P.2d at 1100; and the need to gather and examine other pertinent materials unrelated to the defendant's conduct while in prison. *State v. Book*, 127 Idaho 352, 356, 900 P.2d 1363, 1367 (1995); *Tranmer*, 135 Idaho at 617–18, 21 P.3d at 939–40.

■■■ A trial court may not, however, delay ruling on the motion for the purpose or with the likely effect of usurping the function of the parole authorities, as occurred in *Chapman* where a district court granted a Rule 35 motion two and a half years after it was filed. *Chapman*, 121 Idaho at 356, 825 P.2d at 79. The *Chapman* Court noted that even assuming the defendant bore no responsibility for the delay,[1] the district court infringed on the duties of the parole board by basing its decision on the defendant's good behavior during years of incarceration. We have subsequently reiterated that, "[t]he 'reasonable time' granted to the trial court is 'a reasonable time to decide the issue presented by the rule 35 motion, not a license to wait and reevaluate the sentencing decision in the light of subsequent developments.'" *Tranmer*, 135 Idaho at 616, 21 P.3d at 938 (quoting *Diggs v. United States*, 740 F.2d 239, 246–47 (3d Cir.1984)). It is a defendant's responsibility to precipitate action on a Rule 35 motion within a reasonable time or to provide an adequate record justifying the

delay, and if the record is devoid of any explanation, we cannot hold that a delay was reasonable. *State v. Day*, 131 Idaho 184, 186, 953 P.2d 624, 626 (Ct.App.1998). *See also State v. Payan*, 132 Idaho 614, 619, 977 P.2d 228, 233 (Ct.App.1998); *Simpson*, 131 Idaho at 197 n. 2, 953 P.2d at 637 n. 2; *State v. Maggard*, 126 Idaho 477, 480, 886 P.2d 782, 785 (Ct.App.1994).

In the present case, the State alleges that the district court committed a *Chapman*-style violation. The State asserts that "the district court delayed ruling on Fisch's motion so that it could re-evaluate its sentencing decision in light of Fisch's progress in prison and it finally granted Fisch's motion with the likely effect and express purpose of usurping the duties of the parole board." Nothing in the record before us supports this contention. It is entirely clear that the district court deferred acting on Fisch's motion *only* in order to obtain the psychosexual evaluation that the court ordered in February 2004 and deemed necessary for an informed decision on Fisch's motion. The psychosexual evaluation was not a report on Fisch's progress or behavior in prison, but instead was an assessment of his mental health, character and likelihood of recidivism. The district judge expressed frustration at the delays and repeatedly said that, although he doubted the evaluation would change his mind, he wanted to see it before ruling on Fisch's Rule 35 motion because the evaluation could answer questions that lingered in the judge's mind about Fisch. Far from purposely delaying the disposition, the court carefully monitored the status of the evaluation, setting conferences at least once a month and sometimes more frequently, indicating a desire to receive the report rather than to evaluate Fisch's behavior as an inmate. Further, the court did not indicate that Fisch's sentence was being reduced because of his behavior while in prison. Indeed, Fisch's behavior was apparently quite poor, but the court set aside these concerns because the report indicated that Fisch was unlikely to re-offend. Fisch did not submit, and the trial court did not request, information concerning his con-

---

1. In actuality, it appeared that the defendant in *Chapman* played a large role in the delay because he had waited over a year to hire a new

attorney to proceed on the motion after his former counsel withdrew.

duct in prison. Such information was submitted only by the State, presumably because it did not present a flattering portrait of Fisch.

In explaining its decision to reduce Fisch's sentence after having examined the psychosexual evaluation report, the court found it significant that the evaluator concluded that Fisch was not a sexual predator, presented a low risk of reoffending and did not pose a danger to his children. The court also found significant the evaluator's diagnosis that Fisch suffered from a personality disorder, which explained his offensive (though not illegal) behavior in court and in prison. The court then observed that if Fisch continued to commit disciplinary offenses in prison, which he seemed poised to do because of his psychological disorders, he likely would never be paroled and would serve the full, then-existing, sixteen-year sentence. The court's remarks included the following:

> I am trying to assess what the appropriate punishment is for someone who finds himself in Mr. Fisch's position. His performance in court was abominable. It's the closest I have seen to contemptuous behavior, if it wasn't contemptuous. But just because I don't like Mr. Fisch and what he does in my courtroom doesn't mean I should give him a disproportionate sentence. Now I will acknowledge that Mr. Fisch is a difficult person to deal with, but difficulty in that sense is again not criminal behavior. It may bode poorly for his ability to be monitored on probation, but I don't know that it's something that should result in a harsher sentence than would otherwise be imposed.... I'm not sure that somebody should be imprisoned and continue to be in prison because they have a personality disorder.... Now, to the extent that their behavior is criminal, I have no hesitation in sending them to the penitentiary for a long time, but when their underlying difficulty is a personality disorder that struggles with authority, not criminal behavior, that's where I am challenged and that's the difficulty.

The court observed that the original sentence was "an upward deviation" from what the court would normally have imposed, and that even a reduced sentence of two years determinate followed by eight years indeterminate would be an upward deviation. The court then concluded that the latter was a more appropriate sentence for Mr. Fisch.

█ Contrary to the State's arguments, these comments by the district court did not express a purpose of usurping the power of parole authorities or a view that there would likely be an "abuse of power" by the parole authorities. Certainly, the trial court was not acting out of any disagreement with a decision of the Commission of Pardons and Parole, as Fisch had not yet even become eligible for parole consideration under his original sentence when the court granted the Rule 35 motion. Rather, the court was permissibly considering factors that are pertinent for any district court fashioning an indeterminate term of a felony sentence—whether a defendant's disrespectful, uncivil and "obnoxious" behavior were of such nature that they were aggravating factors calling for a lengthier sentence and whether the indeterminate term will likely be served in prison or on parole. It is the district court's obligation to tailor a sentence to meet the sentencing goals of deterrence, rehabilitation, retribution, and the protection of society, while taking into account the nature of the particular offense and the character and characteristics of the particular offender. See State v. Brown, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992); State v. Young, 119 Idaho 510, 511, 808 P.2d 429, 430 (Ct.App. 1991); State v. Toohill, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). That is what the district court did here when it modified Fisch's sentence, taking into account Fisch's personal characteristics and the effect they should have on his sentence. There is nothing improper about a court tailoring the indeterminate term of a sentence according to whether the court expects that it will be served in prison or on parole.

In this case there was an unusually long lapse between the filing of the Rule 35 motion and its disposition by the court, but Fisch has shown a legitimate cause for this delay. It was the result of a long string of continuances required to complete the court-authorized psychosexual evaluation. None of

the delay was caused by the court or directly caused by Fisch. Some continuances were granted to accommodate the evaluator. Most, however, were directly caused by conduct of the Department of Correction, including canceling appointments, freezing Fisch's funds, moving Fisch to a distant facility, and then not complying with a court order to transport Fisch back to Boise for his evaluation. While none of these actions may have been calculated to prevent or postpone the evaluation, they had that effect. These delays by an executive branch agency, whether intentional or inadvertent, cannot be attributed to the district court, which took action on Fisch's Rule 35 motion as soon as the record was complete.

Accordingly, we hold that the record demonstrates legitimate cause for the delay in the district court's action on Fisch's Rule 35 motion and does not disclose any act of the trial court taken with the purpose or the effect of infringing upon the prerogatives of the parole authorities. The district court therefore possessed jurisdiction to grant Fisch's Rule 35 motion, and the order reducing Fisch's sentences is affirmed.

Chief Judge PERRY and Judge GUTIERREZ concur.

