186 P.3d 676

STATE of Idaho, Plaintiff–Respondent,

v.

Edwardo IZAGUIRRE, Defendant–Appellant.

No. 33519.

Court of Appeals of Idaho.

March 27, 2008.

Review Denied June 20, 2008.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant. Dennis A. Benjamin argued.

Hon. Lawrence G. Wasden, Attorney General; Jennifer E. Birken, Deputy Attorney General, Boise, for respondent. Jennifer E. Birken argued.

LANSING, Judge.

Edwardo Izaguirre was convicted of second degree murder. On appeal, he contends that his unified life sentence, with a sixty-year fixed term of imprisonment, is excessive; that the district court erred by denying his motion for a neuropsychological evaluation at public expense to support his motion to reduce the sentence; that the district court erred by denying his motion to reduce the sentence on the evidence presented; and that the district court erred by imposing restitution in an amount exceeding Izaguirre's present or future ability to pay. We reverse the order denying a neuropsychological evaluation, vacate the sentence and restitution order, and remand for resentencing.

## I.

## BACKGROUND

Izaguirre pleaded guilty to second degree murder for the shooting death of Orlando Hernandez. As there was no trial and the record on appeal contains no preliminary hearing transcript, we glean the circumstances surrounding the offense from the presentence investigation report, including numerous witness statements and police reports.

Izaguirre was a member of a Caldwell, Idaho gang. In the late evening on August 10, 2005, twenty-year-old Izaguirre and two fellow gang members, Niko Trinidad and Sael Castillo, were cruising the streets of downtown Boise in Izaguirre's vehicle, with a .357 revolver in the car. Orlando Hernandez and some of his friends were outside of a bar standing in line to gain entry. For reasons that are not clear, there was bad blood between Izaguirre and Hernandez, the two having engaged in physical fights in the past, as had Trinidad and Hernandez.[1] Over a short period, the Izaguirre group drove past and then returned to the location of the Hernandez group several times. The Izaguirre group yelled insults and flashed gang signs at the Hernandez group, apparently trying to start a fight. Some witnesses said that members of the Hernandez group responded in kind.

Ultimately, the Hernandez group decided to leave. As Hernandez was walking to his car, he encountered the Izaguirre vehicle stopped at a traffic light. Hernandez approached the vehicle. Some independent witnesses said that he punched Trinidad, the driver, several times. Izaguirre, seated behind the driver, picked up the gun and shot Hernandez, who died a short time later. Izaguirre, Trinidad and Castillo drove away but were soon apprehended by Boise police.

Izaguirre was charged with second degree murder, Idaho Code §§ 18-4001, -4003(g), and with destruction, alteration, or concealment of evidence, I.C. § 18-2603, for hiding the murder weapon. A sentence enhancement was also requested for use of a firearm in the commission of the murder, I.C. § 19-2520.

While Izaguirre was jailed awaiting disposition of these charges, he was very disruptive. He threw water, feces and urine at other inmates and was convicted of misdemeanor battery for fighting with a fellow inmate. He "tagged" his cell with gang insignia, flooded a toilet, and repeatedly got into disputes with other inmates. Izaguirre was apparently of the belief that it made no difference how he acted because, as he informed a guard, he "was going to prison for life anyway." Izaguirre told the presentence investigator that he planned to continue his affiliation with his gang while in prison and that he expected to be involved in gang related altercations during his imprisonment.

Pursuant to a plea agreement, Izaguirre pleaded guilty to second degree murder, and the destruction charge and request for sentence enhancement were dismissed. As part of the agreement, the State also agreed to recommend no more than a unified life sentence with twenty-five years determinate. At the sentencing hearing, both the State and defense counsel made that recommendation. The district court did not follow the

---

1. We found no witness statement indicating that Hernandez was a member of a gang, but some witnesses state that he was friends with members of a rival Caldwell gang, which made him an enemy of Izaguirre's gang. Whether this was the basis of Izaguirre's animosity toward Hernandez is not known, however.

recommendations, but instead imposed a life sentence with sixty years determinate. The court also ordered restitution to Hernandez's family and the Victim Compensation Fund.

Within 120 days after entry of judgment, Izaguirre filed an Idaho Criminal Rule 35 motion for reduction of the sentence, together with supporting evidence, including an affidavit from neuropsychologist Dr. Craig Beaver. In the affidavit, Dr. Beaver stated that he had reviewed records related to Izaguirre, including his behavior and personal history and that this information raised a "suspicion of innate neurocognitive limitations." The affidavit also stated that medical literature establishes that "a significant amount of change happens with the brain and its governing structures in the early 20s," including changes in the frontal lobes which "do not become fully maturated and exert control over an individual's behaviors often until adults are well into their late 20s." This led to the possibility, according to Dr. Beaver, that Izaguirre would continue to mature neurologically, which could have a positive impact on his behavior. Dr. Beaver's affidavit also noted the existence of research finding that at about the age of forty or older, people become less aggressive and their risk of violence drops significantly. The affidavit concluded with an opinion that a comprehensive neuropsychological evaluation of Izaguirre would be appropriate. The brief filed in support of Izaguirre's Rule 35 motion informed the court that Izaguirre's family was attempting to secure the money for a neuropsychological evaluation and requested that a hearing on the motion be set out three months to allow time for the evaluation. The district court issued a scheduling order requiring that the evaluation and any other materials in support of the Rule 35 motion be submitted no later than March 20, 2007. On that date, the evaluation was not submitted, but instead Izaguirre filed a motion requesting that the district court order that a confidential neuropsychological evaluation be done at public expense. That motion was denied. On March 20, Izaguirre also filed an affidavit of his counsel to which were attached seven articles from professional journals, all of which addressed the development and maturation of the brains of adolescents and young adults. The district court subsequently denied the motion for reduction of the sentence.

Izaguirre appeals, contending that the district court erred in denying his request for a neuropsychological evaluation at public expense to support his motion for reduction of his sentence, that his sentence is excessive and should have been reduced on the Rule 35 motion, and that the ordered restitution is excessive.

## II.

## ANALYSIS

■ We review a sentence on appeal for abuse of the sentencing court's discretion. *See State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992); *State v. Sanchez*, 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989); *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). The objectives of sentencing, against which the reasonableness of a sentence is to be measured, are the protection of society, the deterrence of crime, the rehabilitation of the offender and punishment or retribution. *Id.* In examining the reasonableness of a sentence, we conduct an independent review of the record, focusing on the nature of the offense and the character of the offender. *State v. Young*, 119 Idaho 510, 511, 808 P.2d 429, 430 (Ct.App.1991).

■ A motion to reduce a legal sentence is also committed to the discretion of the sentencing court. *State v. Arambula*, 97 Idaho 627, 630, 550 P.2d 130, 133 (1976); *State v. Lopez*, 106 Idaho 447, 450, 680 P.2d 869, 872 (Ct.App.1984). Therefore, on appeal from a denial of a Rule 35 motion, we determine whether the trial court abused its discretion, applying the same criteria that are used in reviewing the reasonableness of the original sentence. *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct.App.1987).

Most appeals from sentences or from the denial of Rule 35 motions contest only the length of the sentences, but in this case we are required to examine not the severity of the sentence per se, but the manner by which the district court arrived at the sentence and the denial of the Rule 35 motion. On appeal

an abuse of discretion may be found if the trial court did not perceive the issue as one of discretion, or did not act within the outer boundaries of such discretion and consistently with any applicable legal standards, or did not reach its decision by an exercise of reason. *State v. Field*, 144 Idaho 559, 568, 165 P.3d 273, 282 (2007); *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). If the trial court acted irrationally, an abuse of discretion will be found. *See State v. Manley*, 142 Idaho 338, 345, 127 P.3d 954, 961 (2005). For a number of reasons explained below, we conclude that the order denying Izaguirre's request for a neurocognitive evaluation must be reversed and that his sentence must be vacated and a resentencing be conducted.

First, it is our conclusion that the district court erred in refusing to order a neuropsychological evaluation of Izaguirre at public expense when it was requested in connection with Izaguirre's Rule 35 motion. Idaho Code § 19–2522(1) requires that "[i]f there is reason to believe the mental condition of the defendant will be a significant factor at sentencing and for good cause shown, the court shall appoint at least one (1) psychiatrist or licensed psychologist to examine and report upon the mental condition of the defendant." In circumstances where a mental evaluation was clearly called for, Idaho appellate courts have found error in a court's failure to order a psychological evaluation prior to sentencing. *See, e.g., State v. French*, 95 Idaho 853, 522 P.2d 61 (1974); *State v. Collins*, 144 Idaho 408, 409–10, 162 P.3d 787, 788–89 (Ct.App.2007); *State v. Craner*, 137 Idaho 188, 45 P.3d 844 (Ct.App. 2002); *State v. McFarland*, 125 Idaho 876,

876 P.2d 158 (Ct.App.1994). The decision whether to obtain a psychological evaluation in aid of sentencing is discretionary, but, as with any discretionary determination, the trial court's action must be consistent with applicable legal standards. *State v. Coonts*, 137 Idaho 150, 152, 44 P.3d 1205, 1207 (Ct.App. 2002). In this case Izaguirre did not request a psychological evaluation prior to sentencing, and on appeal he does not argue that the trial court should have ordered one *sua sponte*. Therefore, there is no claim of a direct violation of I.C. § 19–2522. Izaguirre did, however, request a neuropsychological evaluation in aid of his Rule 35 motion, and factors that bear upon the need for such an evaluation before sentencing are also relevant to this request. We therefore examine whether the trial court abused its discretion in denying Izaguirre's motion.[2]

Dr. Beaver's affidavit identified a number of factors gleaned from Izaguirre's personal history and behavior that led Dr. Beaver to suspect that neurocognitive abnormalities may have affected Izaguirre's behavior and would affect the risk of future aggressive behavior. There had been no prior psychological evaluation that provided insight into Izaguirre's psychological makeup for the court. In these circumstances, Izaguirre has shown that a neuropsychological evaluation would likely provide insights that would aid the sentencing court in understanding possible causes of his behavior, the prospects for helpful treatment, and his risk of future violence as they may bear upon his culpability, his potential for rehabilitation, and the duration of sentence that is necessary for retribution, deterrence, and the protection of society. The lengthier the sentence under

2. The State argues that the district court lacked jurisdiction to consider Izaguirre's Rule 35 motion because, although the motion itself was filed within 120 days of judgment, as required by I.C.R. 35, he requested additional time to file supporting information, did not file his request for a neuropsychological evaluation at public expense until after the 120 days had expired, and filed some supporting affidavits after that time limit. It is well established that the 120–day time limit for filing a motion for reduction of a sentence under Idaho Criminal Rule 35 is jurisdictional, and the court therefore has no power to grant an untimely motion. *State v. Parvin*, 137 Idaho 783, 785, 53 P.3d 834, 836 (Ct.App.2002);

*State v. Parrish*, 110 Idaho 599, 716 P.2d 1371 (Ct.App.1986). However, it is equally well established that the trial court may allow evidence supporting the motion, including a psychological evaluation, to be prepared and submitted after the 120–day time limit and may defer ruling on the motion for a reasonable time in order to allow the submission of such supporting evidence. *State v. Book*, 127 Idaho 352, 355–56, 900 P.2d 1363, 1366–67 (1995); *State v. Fisch*, 142 Idaho 781, 133 P.3d 1246 (Ct.App.2006); *State v. Veloquio*, 141 Idaho 154, 106 P.3d 480 (Ct.App.2005); *State v. Brydon*, 121 Idaho 890, 892, 828 P.2d 919, 921 (Ct.App.1992). Therefore, the State's argument is without merit.

consideration, the greater is a defendant's interest in being able to provide such psychological information to inform the court's sentencing decision. Here, where Izaguirre was requesting reconsideration of a unified life sentence with a sixty-year fixed term—substantively the equivalent of a fixed life sentence—and where he has shown through the affidavit of a psychologist that there is reason to suspect neurocognitive abnormalities that would warrant consideration by the court, we conclude that the motion for an evaluation should have been granted.

Other factors also lead us to conclude that Izaguirre's sentence must be reconsidered. These include the district court's unwillingness to consider the articles from professional journals on brain development that were submitted by Izaguirre in support of his Rule 35 motion. Before denying the Rule 35 motion, the court referred to these as "a plethora of articles regarding the growth of the pre-frontal lobes in teenage offenders and the effect on the death penalty," and then dismissed the articles because "[t]his was not a death penalty case and Izaguirre was not a teenager at the time of the murder or at the time he was acting out in custody." Even a cursory examination of the articles discloses that they address brain maturation that continues to occur beyond the teenage years and well into the 20s, and the focus of the articles is not limited to "the effect on the death penalty." A trial court abuses its discretion if it unduly limits the information it considers before ruling upon an I.C.R. 35 motion. *State v. Findeisen*, 119 Idaho 903, 905, 811 P.2d 513, 515 (Ct.App.1991); *State v. Puga*, 114 Idaho 117, 118, 753 P.2d 1263, 1264 (Ct. App.1987); *State v. Torres*, 107 Idaho 895, 898, 693 P.2d 1097, 1100 (Ct.App.1984). Here, the trial court unduly limited the information it would consider when it declined to give attention to the content of the articles on which Izaguirre partially based his Rule 35 motion.

In addition, several explanations given by the trial court for imposing a determinate term of sixty years—more than twice the joint recommendation of the prosecutor and the defense—appear not to be well grounded. For example, the court explained

that it rejected the recommended twenty-five-year determinate term because "I also think that twenty-five years fixed for the murder, not the accidental killing, but the murder of a human being is too little." This appears to be stated as a general principle that twenty-five years is an inadequate fixed term for any murder. While any murder unquestionably is a grievous crime warranting a substantial prison sentence, the district court's declaration that a twenty-five-year sentence can never be sufficient is not consistent with Idaho law. Our legislature has authorized for second degree murder a unified sentence ranging from as little as ten years up to life, and it has mandated no minimum length for the determinate portion of the sentence. I.C. § 18–4004. Further, the Idaho Reporter is replete with cases in which determinate terms of twenty-five years or less were imposed for murder, *e.g., State v. Sheahan*, 139 Idaho 267, 77 P.3d 956 (2003) (life sentence with twenty years fixed for first degree murder of bail bondsman); *State v. Varie*, 135 Idaho 848, 26 P.3d 31 (2001) (thirty-five-year sentence with seven years fixed for wife's second degree murder of husband); *State v. Kuzmichev*, 132 Idaho 536, 976 P.2d 462 (1999) (life sentence with twenty-one years fixed for husband's murder of wife); *State v. Griffith*, 144 Idaho 356, 161 P.3d 675 (Ct.App.2007) (life sentence with twenty-two years fixed for first degree murder for beating two-year-old child to death); *State v. Whiteley*, 132 Idaho 678, 978 P.2d 238 (Ct.App.1999) (life sentence with twenty-four years fixed for second degree murder where defendant strangled female friend while victim fought for her life for five minutes); *State v. Robertson*, 130 Idaho 287, 939 P.2d 863 (Ct.App.1997) (life sentence with twenty-five years fixed for second degree murder where defendant beat, humiliated and then shot friend in the head and burned his body); *State v. Schneider*, 129 Idaho 59, 921 P.2d 759 (Ct.App.1996) (life sentence with twenty-five years fixed where defendant raped, beat and then murdered victim); *State v. Moore*, 127 Idaho 780, 906 P.2d 150 (Ct.App.1995) (life sentence with twenty-five years fixed for first degree murder of police officer by young teenager), strongly suggesting that a standard requiring a determinate sentence of more than twenty-five years for all murder cases is out of step with judicial

norms and was an undue, self-imposed restriction upon the district court's exercise of its sentencing discretion.

■ The district court also informed Izaguirre that it had considered a shorter sentence "until I read the presentence report. When I saw your behavior in the jail, that told me that you need a significant deterrence and that's what changed my mind. It was your behavior and your choices in the jail. Otherwise, I would have seriously considered the argument of counsel. But it is your behavior and your choices that have resulted in this particular sentence." Thus, it appears that the court may have added thirty-five years to the twenty-five-year fixed term recommended by counsel for both parties because of Izaguirre's misbehavior in jail. While an inmate's disruptive conduct in jail is a legitimate factor for a sentencing court's consideration, the district court's reasoning that an additional thirty-five-year term in prison was necessary because of conduct amounting to misdemeanors is not sound. To the extent that the court meant that Izaguirre's actions in jail demonstrated that prison treatment and rehabilitation programs that would be available to him over some lesser period would be insufficient to correct his behavior, or that the maturation that would occur as he grew older would not moderate his propensity to act out, we again see no rational basis for the conclusion. In fact, this is a question on which the neuropsychological evaluation requested by Izaguirre might have offered insight and on which the professional journal articles that the court declined to consider provided relevant information. Moreover, a shorter determinate term would not necessarily cause Izaguirre to be released on parole at the end of that term. The Commission of Pardons and Paroles will be able to discern whether serious misconduct has continued and whether that misconduct warrants denial of parole and continued imprisonment beyond the determinate term.

Finally, the district court provided the following observations about its reasons for not imposing a fixed life sentence:

> I thought about fixed life. Since I have been on the bench, I have yet to ever give it. This is one time where I've seriously thought about it. But at the same time, I also feel that fixed life in this case would make it almost impossible for the other inmates that have to put up with you [apparently referring to the court's expectation that Izaguirre would misbehave in prison]. So there has to be some incentive for you to behave yourself because you've proven that you don't behave yourself so far.
>
> ... [S]ixty years for the murder of another human being is appropriate. And that way it will be up to you to behave yourself so that at 80 you will be eligible for parole.

In this Court's view, the notion that there is a significant difference between a sixty-year fixed term and a fixed life term, or that the prospect of parole at age eighty would give a twenty-year-old offender more incentive to behave throughout his term of imprisonment than would a fixed life sentence, bears little basis in reality.

On this record we cannot say that either the sentence imposed on Izaguirre or the denial of his Rule 35 motion was predicated on sound reasoning. We therefore conclude that Izaguirre's sentence must be vacated and a new sentencing hearing conducted before a different district judge after the conduct of a neuropsychological evaluation at public expense. Because the length of the new sentence that may be imposed on remand will affect Izaguirre's future ability to pay restitution, it will be relevant to the amount of restitution that should be ordered. We therefore also vacate that portion of the restitution order making an award to the Victim Compensation Fund so the district judge who resentences Izaguirre on remand may also determine the restitution amount.

The order denying Izaguirre's request for a neuropsychological evaluation at public expense is reversed. His sentence is vacated and the restitution order is vacated in part, and the case remanded for further proceedings in compliance with this opinion.

Chief Judge GUTIERREZ and Judge Pro Tem WALTERS concur.