# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 47028

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | Filed: December 16, 2020 |
| Plaintiff-Respondent, | ) | |
| | ) | Melanie Gagnepain, Clerk |
| v. | ) | |
| | ) | |
| EUGENE RALPH RUFF, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Hon. Darren B. Simpson, District Judge.

Judgment of conviction and sentence for second degree murder, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Eugene Ralph Ruff appeals from his judgment of conviction for second degree murder, Idaho Code §§ 18-4001, 18-4002, 18-4003(g), 18-4004, entered upon his guilty plea. Specifically, he challenges his sentence. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 5, 2018, Ruff repeatedly shot Bettilee Ruff, his wife of more than forty-three years, resulting in her death.[1] On that evening, Ruff and Bettilee were driving around drinking beer in the Aberdeen area. Sometime during the drive, Ruff received a text message that he

---

[1] Because neither a preliminary hearing nor a trial occurred in this case, the circumstances surrounding Ruff's offense are derived from the presentence investigation report and the sentencing hearing transcript.

needed to be at work at 7 a.m. the next morning. Ruff contends he shared this information with Bettilee, and thereafter they drove around drinking for another two hours. After they returned home, an argument ensued between Ruff and Bettilee about whether Ruff had told her earlier in the evening what time he needed to be at work the next morning.

According to a detective who interviewed Ruff, Ruff stated Bettilee began "bringing up incidents from the past" and getting physical with him by, for example, putting her hand over his mouth. Further, Ruff told the detective that he blew a "big ass, bad time gasket"; opened the gun cabinet in the bedroom, breaking its glass door and cutting his hand; intentionally selected a loaded .22-225 bolt action rifle; and shot at Bettilee but missed her. He then reloaded and shot her three more times with the rifle. According to the autopsy report, two bullets entered Bettilee's right chest and were recovered on the left side of her neck. A third bullet went through her right hand into her left chest and broke her left clavicle. After shooting Bettilee, Ruff called 911, confessed and waited outside their home for law enforcement. While waiting, Ruff also called two of their three daughters and told them what he had done.

The State charged Ruff with first degree murder. A district court judge conducted a mediation between the parties, who entered into a stipulated settlement agreement in which Ruff agreed to plead guilty to second degree murder. In exchange, the parties agreed the district court could impose an indeterminate life sentence with a determinate sentence of no less than ten years and no more than eighteen years. The stipulation stated it was binding on the district court.

At the sentencing hearing, the State recommended a fixed term of eighteen years while Ruff recommended a fixed term of ten years. The district court[2] imposed an indeterminate life sentence with a determinate sentence of eighteen years. Later, Ruff moved for reconsideration of this sentence under Idaho Criminal Rule 35, and the court denied that motion. Ruff timely appeals his sentence.[3]

---

[2]    The district court judge who imposed the sentence is different than the district court judge who presided over the parties' mediation.

[3]    Ruff initially appealed the district court's denial of his Rule 35 motion. He filed a revised opening brief, however, withdrawing that particular challenge.

## ANALYSIS

On appeal, Ruff argues the district court imposed an excessive determinate sentence of eighteen years. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show it is unreasonable and, thus, a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent an abuse of discretion if the appellant shows the sentence is unreasonable based on the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the appellant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Ruff argues the district court abused its discretion by imposing an eighteen-year determinate sentence, which he contends is "excessive under any reasonable view of the facts." In support, Ruff argues he presents "little risk to society," noting this case is his first felony conviction; he was sixty-four years old at the time of the offense; he has a loving relationship with his three daughters; and he has a history of employment. Further, Ruff argues he does not need to be imprisoned for eighteen years to be rehabilitated because he admitted his crime immediately; called 911; apologized repeatedly for killing Bettilee; and "will suffer the consequences of his actions forever." While Ruff concedes he deserved to be punished for his conduct, he notes his daughters requested leniency for him. Finally, Ruff argues "the general deterrence rationale" is inapplicable in "impulsive" cases like domestic violence cases which occur "in the presence of high emotion with little time for reflection." In support of this proposition, Ruff cites on appeal two legal articles.

We disagree that the district court abused its discretion by imposing an eighteen-year determinate sentence. The court considered all of the mitigating factors that Ruff identifies including his remorse, his age, and his daughters' request for leniency for him; that the conviction was Ruff's first felony; and that Ruff immediately took responsibility for his conduct. Despite acknowledging these facts, however, the court was concerned about the serious nature of Ruff's crime and that his request for leniency overlooked the seriousness of his crime. For example, the court stated that "this is a murder [which] was senseless and there's no justification"; "your wife, and the mother of these daughters, doesn't have the opportunity [to get her life back] anymore"; and "there's sufficient intent just with the fact that you missed her on the first shot, and then there were three more. . . . I have no doubt you knew who was there and what was going on." Further, the court noted the need for deterrence in domestic violence cases stating, "[S]omething needs to be in place as far as a sentence that hopefully will deter others from making similar decisions." In reaching this conclusion, the court did not consider the legal articles Ruff cites on appeal, but the record does not indicate Ruff provided those articles to the court.

Based on a review of the record, we disagree with Ruff's assertion that the sentence "is excessive under any reasonable view of the facts." Rather, we conclude the district court properly considered the mitigating factors and the sentencing objectives of protecting society and of achieving punishment, deterrence, and rehabilitation. *See Toohill*, 103 Idaho at 568, 650 P.2d at 710 (identifying sentencing objectives). Accordingly, we cannot say the court abused its discretion by imposing an eighteen-year determinate sentence.

Ruff also argues on appeal that the district court abused its discretion by "essentially [imposing] a *personal* mandatory minimum that was inconsistent with the sentencing range dictated by Idaho law." In support, Ruff points to the court's comments during the sentencing hearing about the appropriate sentence for taking the life of another:

> I have to question, is 10 years sufficient? . . . [T]his Court puts high value in life and the sanctity of life. And 10 years in my opinion is inappropriate for a sentence where an individual takes the life of another. I think, in most circumstances, I would typically be at least 20 years on something like this. When I go back and think about the sentences that I have done, personally, and the observations I've made of other judges in the State and their sentencing.

Ruff contends this comment suggests the court believes "a ten-year fixed prison sentence could never be appropriate in a homicide case, even though it would be perfectly permissible under

4

Idaho law." *See* Idaho Code § 18-4004 ("Every person guilty of murder of the second degree is punishable by imprisonment not less than ten (10) years and the imprisonment may extend to life.").

Also in support of his argument that the district court imposed "a personal mandatory minimum sentence," Ruff relies on this Court's decision in *State v. Izaguirre*, 145 Idaho 820, 186 P.3d 676 (Ct. App. 2008). In that case, the State charged Izaguirre with second degree murder for the shooting death of Orlando Hernandez. *Id.* at 821, 186 P.3d at 677. While in jail on this charge, Izaguirre was very disruptive including throwing water, feces, and urine on other inmates; fighting with another inmate; "tagging" his cell with gang insignia; flooding a toilet; and getting into repeated disputes with other inmates. *Id.* Eventually, Izaguirre and the State entered into a plea agreement pursuant to which the State agreed to recommend no more than a unified life sentence with twenty-five years determinate. *Id.* The district court, however, rejected the State's recommendation and instead imposed a life sentence with sixty years determinate. *Id.* at 821-22, 186 P.3d at 677-78.

Thereafter, Izaguirre filed a Rule 35 motion for a reduction of the sentence and submitted a supporting affidavit from a neuropsychologist. *Izaguirre*, 145 Idaho at 822, 186 P.3d at 678. The neuropsychologist attested that Izaguirre's behavior and personal history "raised a 'suspicion of innate neurocognitive limitations'" and opined that a "comprehensive neuropsychological evaluation of Izaguirre would be appropriate." *Id.* Further, Izaguirre moved for the evaluation to be done at the public's expense. *Id.* The district court denied Izaguirre's motion. *Id.*

On appeal, this Court ruled that Izaguirre had shown a neuropsychological evaluation would provide insights for understanding his behavior and evaluating the sentencing objectives. *Id.* at 823-24, 186 P.3d at 679-80. Accordingly, the Court held that the district court should have granted Izaguirre's motion for the evaluation. *Id.* at 824, 186 P.3d at 680. After holding that the district court erred by declining to obtain and consider a neuropsychological evaluation, this Court also noted in dicta several other factors indicating Izaguirre's sentence should be reconsidered. These factors included the district court's "unwillingness to consider the articles from professional journals on brain development"; "the district court's declaration that a twenty-five year sentence can never be sufficient" for any murder; the appearance that the court added thirty-five years to the State's recommendation of a twenty-five-year fixed sentence based on

5

Izaguirre's misbehavior while in jail; and the court's comment that it considered a fixed life sentence for Izaguirre but rejected that sentence for the benefit of other inmates stating, "[F]ixed life in this case would make it almost impossible for other inmates that have to put up with you." *Id.* at 824-25, 186 P.3d 680-81.

This case is distinguishable from *Izaguirre* in several respects. First, Ruff has not identified any information which the district court in this case failed to consider like the neuropsychological evaluation in *Izaguirre* or otherwise. Second, the court in this case did not make any comments suggesting it was basing its sentencing decision on any improper considerations, unlike the district court in *Izaguirre*. Third, Ruff entered into a mediated settlement agreement in which he agreed that the State could recommend an eighteen-year determinate sentence and that the court could impose a sentence within the parties' agreed upon sentencing range.

Further, we disagree with Ruff's characterization of the district court as imposing "a personal minimum mandatory sentence" based on the court's comment about the appropriate length of a sentence. Regardless, that comment alone is inadequate to establish an abuse of discretion because the court properly considered the mitigating factors and the sentencing objectives and imposed a sentence based on the particular circumstances in this case. Accordingly, the court acted within the boundaries of its discretion and consistently with applicable legal standards when reaching its sentencing decision.

### III.
### CONCLUSION

The district court did not abuse its sentencing discretion when imposing a determinate sentence of eighteen years for second degree murder. Accordingly, we affirm the judgment of conviction and the sentence.

Chief Judge HUSKEY and Judge GRATTON **CONCUR**.

6