[No. B094986. Second Dist., Div. One. Oct. 23, 1995.]

JANE DOE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Michael P. Judge, Public Defender, Albert J. Menaster, Verah Bradford and Alex Ricciardulli, Deputy Public Defenders, for Petitioner.

De Witt W. Clinton, County Counsel, and Frederick R. Bennett, Assistant County Counsel, for Respondent.

No appearance for Real Party in Interest.

## OPINION

**VOGEL (Miriam A.), J.—** ▉ ■ ■ The question in this case is whether an indigent defendant admittedly entitled to and in need of an appointed expert can be denied her choice of experts solely because the one with the expertise she needs is not on the trial court's "approved" panel of expert psychiatrists and psychologists—notwithstanding that (as far as we can tell) none of the "approved" panel members have experience in the specialty needed for this defendant's case. On these facts, our answer is "no."[1]

---

[1] At this pretrial stage of this case, the defendant is entitled to complete confidentiality, including the fact of her request for appointment of an expert. (Pen. Code, § 987.9.) For this reason, we refer to the defendant as "Jane Doe," avoid all references to the specific facts of

## BACKGROUND

This is a death penalty case in which Jane Doe is charged with murder, with a special circumstance allegation. In preparation for trial, Jane's defense counsel applied to the trial court for the appointment of Dr. Nancy Kaser-Boyd, an expert on Battered Woman Syndrome (BWS) and Post Traumatic Stress Disorder (PTSD).[2] The request was denied on the ground that Dr. Kaser-Boyd is not on the court's panel of approved psychiatrists and psychologists. Defense counsel renewed the application two or three times, elaborating on Jane's particular problems and providing a list of the several dozen courts (in Los Angeles County) in which Dr. Kaser-Boyd has testified.[3]

Defense counsel explained that he had talked with two "approved" psychologists suggested by the trial court as BWS and PTSD experts. One

the crimes charged against her and, because she is represented by a deputy public defender whose identity might permit the prosecutor assigned to this case to figure out who we are talking about, we refer to a nameless "defense counsel" when discussing the attorney who represents Jane at trial. The attorneys appearing for Jane in these writ proceedings are members of the Public Defender's Appellate Division and they handle all of the Public Defender's appeals.

While on this subject, we note that the petition before us was filed under seal and clearly marked "confidential," with a notation that neither the prosecutor nor county counsel were to be apprised of Jane's request for an expert. The Superior Court, as the named respondent, was the only party served with a copy of the petition and its exhibits. When we notified the Superior Court that we were considering the issuance of a peremptory writ (*Alexander* v. *Superior Court* (1993) 5 Cal.4th 1218, 1222-1223 [23 Cal.Rptr.2d 397, 859 P.2d 96]; *Ng* v. *Superior Court* (1992) 4 Cal.4th 29, 35 [13 Cal.Rptr.2d 856, 840 P.2d 961]; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180 [203 Cal.Rptr. 626, 681 P.2d 893]), the Court nevertheless turned the matter over to County Counsel (with copies of Jane's petition and the exhibits) and County Counsel filed a return on the Court's behalf (without even bothering to note that it was confidential). Not surprisingly, Jane's appellate counsel is displeased and claims prejudice by reason of this disclosure. While we need not address the question of prejudice at this time, we note that *nothing* should have been turned over to County Counsel by the Superior Court. (*Corenevsky* v. *Superior Court* (1984) 36 Cal.3d 307, 320, fn. 12 [204 Cal.Rptr. 165, 682 P.2d 360].) The Superior Court could have filed its own return or, if County Counsel's assistance was needed, the Court should have provided County Counsel with a simple statement of the issue, without the facts of the offense charged against Jane, without the declarations about Jane's personal history, and without names. Since the only points County Counsel makes on the Court's behalf pertain to budgetary problems and other matters of court administration, there was no reason to disclose anything about this particular case.

[2]Expert testimony on BWS and PTSD is routinely admitted in criminal trials in California and other states and no one suggests they are not recognized psychiatric conditions. (Evid. Code, § 1107; *People* v. *Romero* (1994) 8 Cal.4th 728, 735, fn. 1, 745, fn. 12 [35 Cal.Rptr.2d 270, 883 P.2d 388]; *People* v. *Aris* (1989) 215 Cal.App.3d 1178, 1193-1999 [264 Cal.Rptr. 167]; *State* v. *Kelly* (1984) 97 N.J. 178 [478 A.2d 364, 368].)

[3]Although we don't know whether she was appointed or privately retained, we do know from this list that Dr. Kaser-Boyd has been involved in more than 60 felony cases in Los Angeles County over the last few years.

"candidly informed" defense counsel that she had never conducted research on PTSD or BWS, that she had not published any papers in either area (or in any area) and that "she would not classify herself as an expert in BWS." The other has the same limitations. For these and other reasons, defense counsel is adamant that neither of the "approved" psychologists is appropriate in this instance. Defense counsel's renewed applications were nevertheless denied, with a formal order explaining the court's ruling:

"The Court has read and considered the numerous requests by [defense counsel] for the appointment of Dr. Nancy Kaser-Boyd. *The Court finds sufficient basis for the appointment of a psychiatric expert and will authorize reasonable funds for said expert,* but will not appoint Dr. Nancy Kaser-Boyd for the following reasons:

"1. The Los Angeles Superior Court has a Psychiatric Committee . . . charged with interviewing and investigating all psychiatrists and psychologists who wish to be placed upon the panel list. . . .

"2. The Psychiatric-Psychological list is to be used by all superior courts for the appointment of experts. The Capital Case Flat Fee Memorandum of Understanding requires that [Penal Code section] 987.9 appointments be from superior court approved expert lists.

"3. Presently there are more than forty (40) alienists named on the approved list.

"4. I have been informed by the chair of the Psychiatric Committee that Dr. Nancy Kaser-Boyd applied for that list, but on May 22, 1995, Dr. Kaser-Boyd was informed that the committee had voted not to include her. Even though I am unaware of the reasons for the exclusion of Dr. Kaser-Boyd, I must take into account the committee's decision.

"5. There has been an insufficient showing of good cause to appoint someone other than those included on the panel or that only Dr. Kaser-Boyd has the expertise necessary to prepare for the defense.

"The Court will grant reasonable funds for any psychiatrist or psychologist on the list to help prepare and defend [Jane] in the present action, but the Court will not expend funds for an individual [who] is not included on the list nor qualified to be an expert as determined by a superior court committee.

"[Defense counsel's] repeated requests to appoint Dr. Kaser-Boyd have been considered. This Court understands [defense counsel's] position [and]

the Court feels that an in camera hearing is unnecessary in that all counsel's arguments have been presented." (Italics added.)

This petition followed.

## DISCUSSION

■ In her petition, Jane suggests she is entitled to the appointment of any expert she wants, provided only that she does not exceed the amount allocated for experts in capital cases. In its return, the trial court suggests Jane has no say at all and must accept one of the experts on the approved panel, regardless of Jane's particular needs. Reality lies somewhere in between.

### A.

■ Our courts have long recognized that the constitutional right to the effective assistance of counsel includes the right to ancillary experts. The same courts have also acknowledged that, at the time application is made for the appointment of an expert at public expense, it is often difficult for counsel to demonstrate specific requirements. As a result, trial courts are encouraged to view such requests with "considerable liberality." (See, e.g., *Corenevsky* v. *Superior Court, supra*, 36 Cal.3d at pp. 319-320.) ■ For this reason, we start with the premise that Jane's attorney presented facts sufficient to demonstrate Jane's need for a psychiatrist or psychologist with expertise in the fields of BWS and PTSD. The trial court did not find otherwise, but simply refused to appoint Dr. Kaser-Boyd because she is not on the approved panel and because the court apparently believes there are panel members with the required expertise.

### B.

The "approved" panel is a shorthand reference to a list developed pursuant to the "Policy and Procedures of the Los Angeles Superior Court Psychiatric Subcommittee on Appointment of Psychiatrists and Psychologists." As relevant, panel membership is governed by the following written procedures:

"1.  The Superior Court Psychiatric Subcommittee ('the Committee') maintains a Panel of psychiatrists and psychologists . . . available for appointment to assist the parties in criminal proceedings. . . . A list of the members of the Panel shall from time to time be distributed to judicial officers hearing criminal cases.

"2.  Except in highly unusual cases, all appointments of psychiatrists and psychologists should be made from the Panel.

"3.   The membership of the Panel will be determined by the Committee.

"4.   To become a member of the Panel, a psychiatrist or psychologist should apply in the manner indicated and meet the following minimum criteria:

"a.   Psychiatrists and psychologists must be qualified from the standpoint of professional ability, ethics and diligence to assume appointments and to properly discharge their duties to the court. They must also demonstrate a knowledge of forensic medicine.

"b.   Psychiatrists must have graduated from an accredited school, be board certified and be licensed by the State of California, and must have five years of post-doctorate experience.

"c.   Psychologists must hold a doctorate degree and be licensed by the State of California and must have five years of post-doctorate experience.

"d.   Psychiatrists and psychologists must agree to adhere to all policies and procedures, including the fee schedule, set forth herein.

"e.   Psychiatrists and psychologists must agree to interview subjects at all jail facilities.

"f.   Psychiatrists and psychologists shall apply to be on the Panel by filling out the Panel questionnaire and sending it together with a resume to the chair of the Committee. A psychologist or psychiatrist must be interviewed by the Committee before being placed on the Panel. The decision of the Committee regarding Panel [*sic*] shall be final and shall be communicated to the applicant. If the applicant is placed on the Panel, the applicant shall be sent a copy of these policies and procedures. All new panel members will be on probation for a period of one year.

"g.   The Committee at its discretion, may permit psychiatrists or psychologists who have been on the Panel for a substantial period of time to be placed on an emeritus list. Individuals on such list may take occasional cases after being contacted in advance regarding their willingness to take such cases. Such doctors shall abide by the fee schedule and other applicable rules.

"h.   The [C]ommittee may from time to time develop and promulgate additional criteria for appointment to the Panel.

"5.   A Panel member may be evaluated by the Committee from time to time to determine whether he or she should continue to be on the Panel. . . ." (Italics omitted.)

The remaining portions of the policy memorandum deal with payment and the required minimum contents of reports prepared by panel members. The policy memorandum is silent on the subject of specialties within the general fields of psychiatry and psychology.

## C.

■   Just as an indigent defendant is not entitled to choose her own attorney, so too are there limits on her ability to choose her own experts. As the Supreme Court explained in *Ake* v. *Oklahoma* (1985) 470 U.S. 68, 83 [84 L.Ed.2d 53, 66, 105 S.Ct. 1087], the fact that an indigent defendant is entitled to a court-appointed expert does not mean he "has a constitutional right to choose a psychiatrist of his personal liking." The concern is "access to a competent psychiatrist" who "will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense," and it is up to the state to decide how to implement that right. (*Ibid.*)

## D.

■   The problem in this case is that the record is insufficient to determine whether Jane has access to a "competent" psychiatrist or psychologist. We do not mean to suggest the members of the panel are not competent psychiatrists and psychologists in their respective fields. The psychiatrists are licensed by the state and are board certified graduates of accredited schools with at least five years postdoctorate experience. The psychologists are licensed by the state and have doctorate degrees, plus at least five years postdoctorate experience. We have no doubt that, in the vast majority of cases, the panel members can handle the usual problems faced by psychiatrists and psychologists.

But this is not a run-of-the-mill case and the request is for someone with experience in a particular specialty. In our own profession, we would not appoint a tax lawyer to represent an indigent defendant in a rape case. (See, e.g., Rules Prof. Conduct, rule 3-110(C); Brewer, *Expert Witness Testimony in Legal Malpractice Cases* (1994) 45 S.C. L.Rev. 727, 754 ["the practice of law has become highly specialized [and a]lthough only a few legal areas are recognized as specialties, many lawyers limit their practices to one or two selected areas"].) We are offered no reason to apply a different standard to the medical profession, where there are similar areas of specialties within the general fields of psychiatry and psychology (e.g., a board-certified psychiatrist may have a specialty certificate in geriatric psychiatry, addiction psychiatry or forensic psychiatry). (See, e.g., 3 Official ABMS Directory of Board Certified Medical Specialists (27th ed. 1995) Psychiatrists, p. 5584;

U.S. Dept. of Labor Occupational Outlook Handbook (1992-1993) Psychologists, p. 110.)[4] Our problem with this case, therefore, is that we cannot determine from the record before us whether any of the Panel members have experience with BWS or PTSD or both, and we do not see how the trial court or Jane's defense counsel or any attorney could make that determination.

Neither the trial court nor County Counsel has suggested there is any practical way to determine from the panel list itself whether the approved psychiatrists or psychologists have *any* particular area of specialty. All we know is that this trial court had its clerk call defense counsel with the names of two panel members who the court thought would do. By their own admission, however, those panel members do not have the required expertise. Meanwhile, Jane and her attorney have simply stood fast in their insistence that Dr. Kaser-Boyd must be appointed, and defense counsel has not independently attempted to determine the qualifications of the panel members other than the two referred to above.

### E.

When we balance Jane's constitutional right, not to a psychiatrist of her personal liking, but to "access to a *competent* psychiatrist" who "will conduct an *appropriate* examination and assist in evaluation, preparation, and presentation of the defense" on the one hand, and the trial court's right to decide how best to implement that right on the other (*Ake* v. *Oklahoma*, *supra*, 470 U.S. at p. 83 [84 L.Ed.2d at p. 66]), we find inescapable the conclusion that the current impasse cannot continue.

It is uncontroverted that the two panel members the trial court thought would suffice have no expertise in the required fields and thus are not "competent" within the meaning of *Ake*. It follows that defense counsel must now determine, by inquiry to the Superior Court Psychiatric Subcommittee or by whatever other appropriate means are available, whether other panel members possess the required expertise. If one does, then that panel member may be appointed and Jane cannot complain that the expert of her choice is not hired at public expense.

But if none of the panel members has the required expertise, Jane is entitled to the appointment of someone who does, whether or not that expert is on the panel. (See, e.g., *Corenevsky* v. *Superior Court, supra*, 36 Cal.3d 307, 318-327; Policy & Procedures of L.A. Super. Ct. Psychiatric Subcommittee on Appointment of Psychiatrists and Psychologists, ¶ A.2.) Since we

---

[4]Although panel members must "demonstrate a knowledge of forensic medicine," they need not be board certified in forensic psychiatry.

don't know the reason Dr. Kaser-Boyd's application was rejected, we express no view about the propriety of her appointment in this or any other case. If Dr. Kaser-Boyd remains unacceptable despite the unavailability of a panel member, then another competent expert in the field should be found and appointed. One way or the other, Jane's constitutional rights must be protected from bureaucratic roadblocks.

### F.

For the reasons explained above, a writ must issue in this case and, on remand, Jane and her attorney must be given an opportunity to demonstrate that none of the remaining panel members has the expertise required in this case. To simplify the task for defense counsel in the future, we suggest to the Los Angeles Superior Court that it ask its Psychiatric Subcommittee to develop procedures for identifying specialties and including some background information on the list distributed to the judicial officers presiding over criminal cases. It would also be helpful if the Committee included in its materials a notice that legal questions concerning confidential appointments should be discussed with County Counsel, if at all, only in the abstract manner suggested above. (See fn. 1, *ante.*)

### DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to (1) vacate its orders denying defense counsel's requests for the appointment of Dr. Kaser-Boyd; (2) and to conduct such further proceedings as are necessary to determine whether a panel member possesses the required expertise and, if one does, to appoint that panel member; but (3) if none does, to appoint either Dr. Kaser-Boyd or some other psychiatrist or psychologist who is not a panel member but does have the required expertise.

The Clerk of this Court and the Reporter of Decisions are ordered to file and publish this opinion *without* the name of the petitioner or Superior Court case number or the trial judge or any other identifying information in the caption.

Spencer, P. J., and Ortega, J., concurred.

A petition for a rehearing was denied November 1, 1995, and respondent's petition for review by the Supreme Court was denied January 31, 1996. Lucas, C. J., and Mosk, J., were of the opinion that the petition should be granted.