Filed 3/7/13  In re A.D. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re A.D., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>A.D.,<br><br>      Defendant and Appellant. | **A131450**<br><br>**(Contra Costa County Super. Ct. No. J0901539)** |

A.D. (appellant), born in August 1993, appeals the juvenile court's jurisdictional and dispositional orders.  The case involves an incident in which appellant fired a firearm at a car occupied by five other minors.  Among other things, appellant contends that, because there was no substantial evidence he committed the charged offenses in concert with another gang member, there was insufficient evidence to support the juvenile court's order sustaining a charge of active participation in a criminal street gang (Pen. Code, § 186.22, subd. (a))[1] and gang sentencing enhancements (§ 186.22, subd. (b)(1)) attached to six counts.  Following the Supreme Court's recent decision in *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*), we conclude the evidence was insufficient to support the

_____

[1] All further undesignated statutory references are to the Penal Code.

1

gang participation charge but sufficient to support the sentencing enhancements. We reject appellant's other claims.

## PROCEDURAL BACKGROUND

A January 2010 supplemental petition under section 602 of the Welfare and Institutions Code, filed in Contra Costa County Superior Court, alleged that appellant, already a ward of the court, committed the following offenses: five counts of assault with a firearm (§ 245, subd. (a)(2); counts one through five) involving personal use of a firearm (§ 12022.5, subd. (a)(1)) for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), each count corresponding to a different victim; one count of active participation in a criminal street gang (§ 186.22, subd. (a); count six); and one count of shooting at an occupied motor vehicle (§ 246; count seven) for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

On November 24, 2010, the juvenile court sustained all allegations of the petition after a contested jurisdictional hearing. In January 2011, the court continued appellant's juvenile wardship and set the maximum term of confinement at eight years.

This appeal followed.

## FACTUAL BACKGROUND[2]

On November 12, 2009, M.N., a student at Antioch High School, got a ride home from school with L.F. Also in the car, a green Honda Civic, were R.D., J.R., and A.V. After leaving the school, they encountered appellant and an unidentified companion and got into an argument; L.F. was in the driver's seat of his car and appellant and his companion were walking on the other side of the street. Appellant's companion produced a machete and used it to threaten L.F. L.F. began to drive away, and appellant removed a gun from his waist area.

---

[2] On appeal we are obligated to view the evidence in the light most favorable to the juvenile court's orders and to presume in their support the existence of every fact the court could reasonably deduce from the evidence. (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.) Our factual summary reflects this standard of review. (See *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1056, fn. 1.)

M.N. saw appellant run towards the car with the gun, ducked, and heard two gunshots. Before the shooting, J.R. saw appellant make a hand movement by placing his four fingers sideways and tucking his thumb in his palm, indicating the number four. Appellant told L.F., "let's go to 14th [Street]. And there we'll kick some ass." J.R. saw appellant draw a gun. J.R. ducked and he heard two shots as L.F. drove the car away.

At 2:56 p.m. on November 12, 2009, Antioch Police Officer Ryan Andelin was parked in a patrol car when he heard two gunshots. He then saw a green Honda Civic speed by his location. Officer Andelin drove up behind the Honda, and the Honda pulled over. The front passenger exited the Honda and told the officer someone had shot at the car. The officer could see bullet holes in the rear left window and the back of the car. Officer Andelin searched all of the occupants of the car but found no weapons.

Later that day, Officer Andelin searched appellant's bedroom. He found a white piece of paper with the word "Norte" written twice in red and a rum bottle with the words "Norte XIV" marked in red. Antioch Police Detective James Stenger, an expert on gangs, testified he believed appellant was a Norteño gang member. He based his opinion on a four dots tattoo on appellant's hand, appellant's "Norteño-specific haircut," the hand sign appellant flashed before the shooting, appellant's reference to 14th Street, the Norteño symbols found in appellant's bedroom, appellant's frequent association with Norteño gang members, and information that appellant had relatives who were Norteño gang members.

## DISCUSSION

I.    *The Juvenile Court Did Not Err in Relation to the Competency Determination*

Appellant contends the juvenile court made several reversible errors in relation to the determination of his competency to stand trial. He contends he was constitutionally entitled to appointment of a neuropsychologist, the trial court abused its discretion in concluding the appointed psychologist was qualified, and the determination that appellant was competent is not supported by substantial error and based on an incorrect legal standard.

3

A.    *Background*

On July 12, 2010, counsel for appellant expressed doubt about appellant's competency to assist in his defense due to information counsel had received regarding an injury suffered by appellant in December 2003. In particular, counsel informed the juvenile court that appellant was struck in the forehead with a bat on that occasion, and appellant informed a police officer that he suffered from headaches as a result of the injury. Counsel indicated his interactions with appellant also underlay his request, although he did not provide any specific information. Counsel concluded, "I do believe that there's enough information here that should lead us . . . to appoint a neuropsychologist to perform the necessary tests to determine whether he is competent to proceed in the jurisdictional hearing." The juvenile court suspended proceedings and ordered the appointment of an expert to evaluate appellant's competency. After counsel reviewed a list of experts, the court appointed psychologist Dr. Paul Good to evaluate appellant and provide a report.

On August 27, 2010, Dr. Good submitted his report. The doctor reported that appellant conversed appropriately and gave no indication of severe mental illness or gross cognitive deficits. Appellant's "thought process was clear, coherent and goal directed." Appellant was "engrossed" in his case and the testing showed he demonstrated an awareness and adequate understanding of the proceedings. The doctor commented, "Whatever cognitive impairment he may have, they do not appear to be of such proportion as to be grossly interfering with his thinking on the issues." The doctor concluded that appellant "is competent to be adjudicated at the present time."

On September 17, 2010, appellant moved for the appointment of a neuropsychologist, to "conduct[ ] necessary psychological evaluations and assessments, and testify, if necessary, at the competency hearing or other proceedings in this case." Counsel submitted a declaration in support of the motion. The declaration relayed information provided by Dr. Patricia Weiss, a neuropsychologist, that the type of head injury suffered by appellant "may result in significant long-term damage, including, but not limited to, [appellant's] ability to exercise judgment, engage in rational thinking,

4

evaluate cause and effect, and develop normally, which would comprise overall functioning." Counsel asserted that appellant "has struggled in structured school environments since his head injury" and "experiences migraines on [a] regular basis that he attributes to his head injury." On October 1, it was agreed that the juvenile court would rule on the motion after Dr. Good had testified at appellant's competency hearing.

On November 15, 2010, the date of the competency hearing, appellant moved "for reconsideration [of] appointment of [a] qualified expert."[3] The motion was supported by a declaration from appellant's counsel that repeated many of the averments in his September 17 declaration. Regarding the 2003 injury, the declaration asserted that appellant "received no treatment for his head injury" and that he stayed home from school for two months.

At the competency hearing, Dr. Good testified he is a clinical and forensic psychologist, but not a neuropsychologist. He does not do neurological testing. For 15-20 years he has been on the court panel of psychologists and psychiatrists in six Bay Area counties. He has conducted 700-1,000 competency evaluations and testified regarding competency 40-50 times, 5-10 of which were juvenile cases. He has not testified regarding traumatic brain injury, although he has worked on cases involving such injury; he could not recall whether any of those were juvenile cases. He had specialized training in the late 1990s regarding juvenile competency and he keeps abreast of published works on juvenile competency issues. He was familiar with the published work suggesting that "there are developmental immaturities that can interfere with a juvenile's understanding of competency." He also pointed out that he has had a "lot of experience with adolescence," in both forensic and clinical contexts. He was not familiar with a specific test to assess juvenile competency, but he did not think his opinion would be any different had he used such a test. He stated, "if you consider [appellant] as an adult, he would have been competent without any shadow of a doubt in my mind." Dr. Good did

---

[3] Although the motion was styled a motion for reconsideration, it is not clear whether the juvenile court had denied the original September 17 motion at the time the motion for "reconsideration" was filed.

5

not keep abreast of developments in California case law on competency, but he was familiar with the standard of *Dusky v. United States* (1960) 362 U.S. 402 (*Dusky*) (see part I(D), *post*).

Dr. Good testified that the tests he administered in evaluating appellant for competency were "not developed to identify a neurological deficit. However, if a person has a deficit that impairs their competence, then I would pick it up in terms of the -- the data showing incompetence on a particular answer." Dr. Good reviewed the medical report describing appellant's injury to the head from a bat. From the description of the injury in the report, it did not appear likely appellant had suffered neurological injury.

The juvenile court deemed Dr. Good qualified as an expert in the evaluation of competency. Dr. Good testified that appellant is competent. In particular, appellant has the ability to consult with counsel and assist in his defense, and he has a rational understanding of the proceedings and the nature of the charges against him. In fact, Dr. Good testified appellant is "more competent than many adults that I have found competent." Dr. Good did not see any signs of developmental immaturity that would interfere with his competence. Regarding the possibility of neurological injury, he testified appellant's counsel did not provide him anything that suggested there was such injury, and even if there were such injury it did not interfere with appellant's competence.

The juvenile court denied the motion for reconsideration regarding appointment of a neuropsychologist. The court found appellant was competent based on Dr. Good's undisputed testimony. Among other things, the court stated, "I think Dr. Good's testimony . . . was quite clear -- that if there was some neurological damage . . . then that damage would have shown up somehow in his assessment and there was no evidence that there was such damage that would impair his competence. [¶] And so I think that Dr. Good did take into account assessing for neurological problems that might impair [appellant's] competency, but his testimony is that he found none."

B.      *Appellant Did Not Have a Right To Appointment of a Neuropsychologist*

Appellant contends he was constitutionally entitled to appointment of a neuropsychologist to determine his competency.  His claim is based on two established constitutional rights.

First, the criminal trial of an incompetent defendant violates due process.  (*Medina v. California* (1992) 505 U.S. 437, 453.)  "Similarly, a child subject to delinquency proceedings has a due process right to a competency hearing."  (*In re Christopher F.* (2011) 194 Cal.App.4th 462, 468 (*Christopher F.*); see also *Timothy J. v. Superior Court* (2007) 150 Cal.App.4th 847, 857 (*Timothy J.*).)

Second, "[a] criminal defendant has the due process right to the assistance of expert witnesses, including the right to consult with a psychiatrist or psychologist, if necessary, to prepare his defense.  [Citation.]  The Sixth and Fourteenth Amendments to the United States Constitution also guarantee a defendant's right to present the testimony of these expert witnesses at trial.  [Citation.]"  (*People v. San Nicolas* (2004) 34 Cal.4th 614, 661-662.)  That right is rooted in the proposition that "a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense."  (*Ake v. Oklahoma* (1985) 470 U.S. 68, 77.)  Thus, the United States Supreme Court "has often reaffirmed that fundamental fairness entitles indigent defendants to 'an adequate opportunity to present their claims fairly within the adversary system,' [citation].  To implement this principle, [the Court has] focused on identifying the 'basic tools of an adequate defense or appeal,' [citation], and [has] required that such tools be provided to those defendants who cannot afford to pay for them."  (*Ibid.*)  The right to the assistance of a psychiatric expert applies equally in California juvenile delinquency proceedings.  (*Tyrone B. v. Superior Court* (2008) 164 Cal.App.4th 227, 231 (*Tyrone B.*).)

Applied in the juvenile delinquency context, those two rights—to a competency determination and to the assistance of a psychiatric expert where necessary—require the appointment of a psychiatric expert to assess a minor's competency where it is in doubt.

7

(*Tyrone B.*, *supra*, 164 Cal.App.4th at p. 231.) " ' "Counsel cannot effectively represent a defendant who is unable to understand the proceedings or to rationally assist him." [Citations.]' [Citation.]" (*Ibid.*)

But appellant goes further. He contends his constitutional right to the assistance of a psychiatric expert to determine competency obligated the trial court to appoint a *neuropsychologist* to assess his competency. Appellant's authorities do not support his argument. The most pertinent case cited by appellant, *Doe v. Superior Court* (1995) 39 Cal.App.4th 538 (*Doe*), disapproved on another ground in *James G. v. Superior Court* (2000) 80 Cal.App.4th 275, 283-284, does not suggest that a defendant has the right to determine the specific qualifications of appointed experts. In *Doe*, a death penalty case, the defendant sought appointment of an expert on Battered Woman Syndrome (BWS) and Post Traumatic Stress Disorder (PTSD). (*Doe*, *supra*, 39 Cal.App.4th at p. 541.) The Court of Appeal held that, where the defense counsel "presented facts sufficient to demonstrate [defendant's] need for a psychiatrist or psychologist with expertise in the fields of BWS and PTSD," the defendant's constitutional right to " 'access to a *competent* psychiatrist' " who " 'will conduct an *appropriate* examination and assist in evaluation, preparation, and presentation of the defense,' " required the trial court to appoint an expert with some expertise in those areas, even if such an expert could not be found on the court's panel. (*Id.* at pp. 543, 546, quoting *Ake v. Oklahoma*, *supra*, 470 U.S. at p. 83.)

In the present case, appellant was entitled to an expert regarding competency, and the trial court found that Dr. Good had the requisite expertise. (Cf. *Doe*, *supra*, 39 Cal.App.4th at p. 546 [no evidence showed whether any panel experts had experience with BWS and/or PTSD].) Although the record shows that appellant suffered a serious head injury as a child, unlike the defendant in *Doe*, appellant did not show that neurological testing was necessary to the competency determination. His motion for appointment of a neuropsychologist was supported only by a declaration from his counsel including hearsay statements about what Dr. Weiss told counsel. As described in the declaration, Dr. Weiss' hearsay opinion that appellant's injury could affect his

8

competency was not based on any current behavior by appellant suggestive of neurological damage. Defense counsel's declaration did not indicate that appellant had demonstrated any difficulty in assisting in the defense. (Cf. *Tyrone B.*, *supra*, 164 Cal.App.4th at p. 230 ["Counsel explained that petitioner did not have a 'complete or even near complete grasp' of court processes, participants, or potential ramifications."].) Appellant did not show that any neurological problems resulting from a head injury would *not* manifest themselves in a competency examination conducted by a psychologist not specialized in neurology.

Moreover, before denying the request for appointment of Dr. Weiss, the juvenile court heard the testimony of Dr. Good on the issue of competency. Dr. Good testified appellant was competent with a significant degree of certainty. Also, although he admitted his assessment was not designed to identify neurological deficits, he testified that if any such deficits existed and impaired appellant's competency, he would have seen the impact of such deficits in his examination.

In essence, appellant contends he was entitled to a *neuropsychologist* to assess his competency simply because he suffered a significant head injury seven years earlier, which hypothetically could affect competency, regardless of whether there is any present indication he is not competent to assist in his defense. We disagree. Absent a sufficient showing of circumstances making clear the need for a neurological examination, the juvenile court did not err in failing to appoint a neurological psychologist to assess appellant's competency. (See *Ake v. Oklahoma*, *supra*, 470 U.S. at p. 86 [listing numerous circumstances that made it "clear" that the defendant's mental state "was a substantial factor in his defense"].)

Appellant does not have a "constitutional right to choose a psychiatrist of his personal liking[.]" (*Ake v. Oklahoma*, *supra*, 470 U.S. at p. 83.) Instead, he has the right to access an expert who is "competent" to address the relevant psychological question at issue, in this case his competency. (*Ibid.*) Appellant has not shown, in the circumstances

9

of this case, he was constitutionally entitled to the assistance of a neuropsychologist to address the issue of competency.[4]

C.    *The Juvenile Court Did Not Err in Finding Dr. Good Qualified*

Appellant contends that, even if he was not entitled to appointment of a neuropsychologist, the juvenile court abused its discretion in concluding that Dr. Good was qualified to render an expert opinion regarding juvenile competency. In support of his argument, appellant asserts there have been major changes in California law governing juvenile competency resulting from "advances in scientific understanding of development of the human brain during adolescence." He argues Dr. Good was not qualified to render an opinion on competency that took into consideration those developments.

We disagree. "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates." (Evid. Code, § 720, subd. (a); *People v. Catlin* (2001) 26 Cal.4th 81, 131.) The trial court is given considerable latitude in determining the qualifications of an expert; its ruling will not be disturbed on appeal unless an abuse of discretion is shown. (*People v. Bolin* (1998) 18 Cal.4th 297, 321-322.) A reviewing court may find error only if the witness " '*clearly lacks* qualification as an

---

[4] The other cases cited by defendant are facially distinguishable. (See, e.g., *Porter v. McCollum* (2009) 558 U.S. ___ , ___ [130 S.Ct. 447, 453] [defense counsel ineffective where he failed to investigate and present evidence of defendant's mental health or mental impairment as mitigation evidence in penalty phase of capital trial]; *Abdul-Kabir v. Quarterman* (2007) 550 U.S. 233, 237, 252-256, 263-264 [jury instructions improperly prevented jurors from considering relevant mitigating psychological evidence in determination of whether to impose death penalty]; *State v. Izaguirre* (Idaho Ct. App. 2008) 145 Idaho 820, 823 [trial court erred in denying a request for a neuropsychological evaluation to support a motion for a sentence reduction where psychologist's affidavit "identified a number of factors gleaned from [the defendant's] personal history and behavior that led [the psychologist] to suspect that neurocognitive abnormalities may have affected [the defendant's] behavior and would affect the risk of future aggressive behavior"]; *Fitzgerald v. State* (Okla. Crim. App. 1998) 972 P.2d 1157, 1167 [the defendant "made a showing of need when he presented detailed evidence, including a psychologist's report. . ."].)

10

expert[.]' " (*People v. Hogan* (1982) 31 Cal.3d 815, 852, disapproved on another ground in *People v. Cooper* (1991) 53 Cal.3d 771, 836.)

As detailed previously, Dr. Good has been a panel psychologist for 15-20 years, conducted 700-1,000 competency evaluations, and testified regarding competency 40-50 times. He has received specialized training on juvenile competency, has kept abreast of developments in juvenile competency, and is experienced in working with adolescents. That Dr. Good could have demonstrated greater familiarity with the recent developments in research does not mean he was clearly unqualified to render an opinion on appellant's competency.

It is not significant that Dr. Good was not familiar with three California Court of Appeal decisions inquired about by appellant's counsel during the competency hearing, because those cases did not change the *Dusky* standard (see part I(D), *post*). Moreover, Dr. Good testified he did not see any signs of developmental immaturity that would interfere with appellant's competency, which was the matter addressed in one of those decisions, *Timothy J., supra,* 150 Cal.App.4th 847. Another decision, *Tyrone B., supra,* 164 Cal.App.4th 227, held only that the juvenile court erred in failing to appoint an expert after the minor's counsel expressed a doubt as to the minor's competency; the juvenile court here *did* appoint an expert to assess competency. The final decision, *In re Ricky S.* (2008) 166 Cal.App.4th 232, 236 (*Ricky S.*), held the juvenile court erred in concluding that the minor was competent because he could gain an adequate understanding " 'over time.' " In this case, Dr. Good testified that appellant had a present understanding of the charges and proceedings. Notably, all three decisions applied the *Dusky* standard for determining competency; Dr. Good demonstrated familiarity with that standard. (*Timothy J.*, *supra*, 150 Cal.App.4th at p. 857; *Tyrone B.*, *supra*, 164 Cal.App.4th at pp. 230-231; *Ricky S.*, *supra*, 166 Cal.App.4th at p. 234.)

The juvenile court did not abuse its discretion in finding Dr. Good qualified.

D.      *Substantial Evidence Supports the Juvenile Court's Competency Finding*

Finally, appellant contends that the juvenile court's order finding appellant competent was not supported by substantial evidence. The claim is without merit.

11

The standard for determining a defendant's competency to stand trial was set forth in *Dusky*, *supra*, 362 U.S. 402, and the same standard applies in juvenile delinquency proceedings. "Under that standard, the inquiry is whether the defendant ' "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." ' " (*Timothy J.*, *supra*, 150 Cal.App.4th at p. 857, quoting *Dusky*, *supra*, 362 U.S. at p. 402.) The test "does not define incompetency in terms of mental illness or disability . . . The question is cognitive, whether the defendant's mental condition is such that he or she lacks that degree of rationality required by law [citation] so as to have 'the mental acuity to see, hear and digest the evidence, and the ability to communicate with counsel in helping prepare an effective defense.' [Citation.]" (*Timothy J.*, *supra*, 150 Cal.App.4th at p. 860.) The juvenile court's competency determination is reviewed for substantial evidence. (*Christopher F., supra,* 194 Cal.App.4th at p. 471; *In re Alejandro G.* (2012) 205 Cal.App.4th 472, 480 (*Alejandro G.*).) Substantial evidence is evidence that "inspires confidence and is of ' solid value.' " (*People v. Marshall* (1997) 15 Cal.4th 1, 34.) It is not clear which party bears the burden of proof of competency (*Christopher F.*, *supra*, 194 Cal.App.4th at p. 472; *Alejandro G.*, *supra*, 205 Cal.App.4th at pp. 481-482); for the purposes of this appeal we assume respondent bore the burden.

Appellant contends Dr. Good's report and testimony do not reflect that he "inquired into or analyzed [appellant's] cognitive development with an eye to his ability to rationally assist his counsel." But the report and testimony *did* address cognitive development. For example, the report stated that appellant's "thought process was clear, coherent and goal directed. His thought content was appropriate to the situation and contained no preoccupations, obsessions, compulsions, delusions or exaggerated concerns. [Appellant's] perceptions contained no abnormalities such as auditory or visual hallucinations. His immediate memory was good and he recalled remote events easily. He displayed a concrete ability for abstract thought." In his testimony, Dr. Good specifically stated he did not see any signs of developmental immaturity that would

12

interfere with appellant's competency. There is no evidence to the contrary, showing that appellant has defects in his cognitive development that affect his competency. Appellant also disputes Dr. Good's statement that any neurological damage would have manifested itself in his testing of appellant. To wit, Dr. Good explained that "if a person has a deficit that impairs their competence, then I would pick it up in terms of the . . . data showing incompetence on a particular answer." Even if Dr. Good was not qualified to *identify* any neurological defects, he was qualified to determine whether appellant was incompetent, regardless of the *cause* of any incompetency. As the doctor explained, "you're competent or not regardless of why[.]" Appellate counsel's skepticism is not evidence that can undermine Dr. Good's testimony.

As explained above, Dr. Good's report and testimony showed that appellant was competent under the *Dusky* standard. Dr. Good's evaluation showed that appellant had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and he had a rational as well as factual understanding of the proceedings against him. (*Dusky*, *supra*, 362 U.S. at p. 402; *Alejandro G.*, *supra*, 205 Cal.App.4th at p. 481.) In fact, Dr. Good testified appellant was *more* competent than many adults he had concluded met the competency standard, and the doctor related a story of how appellant had conducted his own legal research to determine the maximum possible sentence applicable to the charges. This was not a close case on competency, and the record is devoid of *any* evidence showing that appellant is incompetent. Instead, appellant's claim on appeal depends entirely on speculation that his childhood injury caused a neurological defect that rendered him incompetent in a manner entirely invisible to the competency assessments employed by Dr. Good. We reject that speculation and conclude substantial evidence supports the trial court's finding that appellant is competent.[5]

---

[5] Because the recent case law developments have not altered the *Dusky* standard (see part I(C), *ante*), we also reject appellant's contention that the trial court's finding based on Dr. Good's testimony "incorporates an incorrect legal standard by reference."

13

II.     *Appellant's Claims Regarding the Gang Charge and Sentencing Enhancements*

Appellant next challenges the sufficiency of the evidence to support the juvenile court's findings on the count 6 charge of active participation in a criminal street gang (§ 186.22, subd. (a); hereafter § 186.22(a)) and on the gang sentencing enhancements (§ 186.22, subd. (b)(1); hereafter § 186.22(b)(1)) attached to counts one through five and seven.  He contends that, in the circumstances of this case, the charge and enhancements could only be sustained if he committed the charged offenses in concert with another Norteño gang member, and there was insufficient evidence his companion was a gang member.[6]

"We review claims of insufficient evidence by examining the entire record in the light most favorable to the judgment below.  [Citation.]  We review to determine if substantial evidence exists for a reasonable trier of fact to find the counts against the minor true beyond a reasonable doubt.  [Citation.]  Substantial evidence must be reasonable, credible, and of solid value.  [Citation.]  We also presume the existence of every fact the lower court could reasonably deduce from the evidence in support of its judgment.  [Citation.]" (*In re Frank S.* (2006) 141 Cal.App.4th 1192, 1196.)

A.     *Legal Background to Sections 186.22(a) and (b)(1)*

Section 186.22 is part of the California Street Terrorism Enforcement and Prevention Act, also known as the STEP Act.  (§ 186.20.)  Section 186.22 contains two relevant provisions, a substantive offense in subdivision (a) and a sentence enhancement in subdivision (b)(1).  Section 186.22(a) states in pertinent part: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang" shall be punished as a felony or misdemeanor.  Section 186.22(b)(1) provides, with exceptions not relevant here, that "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific

---

[6] Appellant does not dispute he is a member of the Norteños and the Norteños is a criminal street gang within the meaning of section 186.22.

14

intent to promote, further, or assist in any criminal conduct by gang members, shall" be punished by an enhanced penalty consecutive to the punishment for the felony.

      B.    *Under* Rodriguez*, Section 186.22(a) Required Proof of Action in Concert*

The substantive offense defined in section 186.22(a) has three elements: [1] "Active participation in a criminal street gang, in the sense of participation that is more than nominal or passive. . . . [2] '[K]nowledge that [the gang's] members engage in or have engaged in a pattern of criminal gang activity,' and [3] . . . that the person 'willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang.' (§ 186.22(a).)" (*People v. Lamas* (2007) 42 Cal.4th 516, 523.) In *People v. Castenada* (2000) 23 Cal.4th 743 (*Castenada*), the Supreme Court considered the meaning of the phrase "actively participates" in section 186.22(a). The court said the Legislature was cognizant of the holding in *Scales v. United States* (1961) 367 U.S. 203 (*Scales*) "that 'mere association with a group cannot be punished unless there is proof that the defendant knows of and intends to further its illegal aims.' " (*Castaneda*, *supra*, 23 Cal.4th at p. 749.) "This explains why the Legislature expressly required in section 186.22(a) that a defendant not only 'actively participates' in a criminal street gang . . ., but also that the defendant does so with 'knowledge that [the gang's] members engage in or have engaged in a pattern of criminal gang activity,' and that the defendant 'willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang.' These statutory elements necessary to prove a violation of section 186.22(a) exceed the due process requirement of personal guilt that the United States Supreme Court articulated in *Scales*[.]" (*Castenada*, *supra*, 23 Cal.4th at p. 749.)

In *Rodriguez*, the Supreme Court considered whether a gang member who acts alone in committing a felony violates section 186.22(a). (*Rodriguez*, *supra*, 55 Cal.4th at p. 1128.) The Court overruled two Court of Appeal decisions, *People v. Salcido* (2007) 149 Cal.App.4th 356 and *People v. Sanchez* (2009) 179 Cal.App.4th 1297, that held that a gang member acting alone could violate section 186.22(a) by promoting or furthering his own felonious conduct. (*Rodriguez*, *supra*, 55 Cal.4th at p. 1137 & fn. 8.) Instead, the Supreme Court focused on the Legislature's use of the plural noun "members,"

15

reasoning:  "Section 186.22(a) speaks of 'criminal conduct by *members* of that gang.' (Italics added.)  '[M]embers' is a plural noun.  The words 'promotes, furthers, or assists' are the verbs describing the defendant's acts, which must be performed willfully.  The phrase 'any felonious criminal conduct' is the direct object of these verbs.  The prepositional phrase 'by members of that gang' indicates who performs the felonious criminal conduct.  Therefore, to satisfy the third element, a defendant must willfully advance, encourage, contribute to, or help *members* of his gang commit felonious criminal conduct.  The plain meaning of section 186.22(a) requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member.  (See § 186.22, subd. (i).)"  (*Rodriguez*, *supra*, 55 Cal.4th at p. 1132.)

Although the Supreme Court stated the statutory language was plain, it also considered the Legislature's intent.  Referencing the due process concerns discussed in *Castaneda* and *Scales*, the court stated, in "requiring that a person commit an underlying felony with at least one other gang member," the Legislature "sought to avoid punishing mere gang membership[.]"  (*Rodriguez*, *supra*, 55 Cal.4th at p. 1134.)  *Rodriguez* further explained, "It is established . . . that one need not have the specific intent to promote, further, or benefit the gang to violate section 186.22(a), nor must one commit a gang-related felony. . . . [I]n considering the STEP Act, 'the Legislature was careful to observe that "mere membership [in a gang] is not punishable under the bill.  The United States Supreme Court has held that mere association with a group cannot be punished unless there is proof that the defendant knows of and intends to further its illegal aims.  [Citation.]  This bill imposes sanctions on active participation in the gang only when the defendant knows about and specifically intends to further the criminal activity; or where he knows of the criminal activity and willfully promotes, furthers, or assists it." '  [Citation.]  The Legislature thus recognized the constitutional prohibition against punishing mere gang membership, and its use of the plural 'members' in section 186.22(a) reflected the Legislature's attempt to provide a nexus between the felonious conduct and gang activity that avoided the concerns raised in *Scales*.  [Citation.]  The

16

Attorney General's interpretation that a gang member may satisfy the statute simply by committing a felony alone reads out of the statute the nexus between defendant's conduct and gang activity that the Legislature put in the statute by requiring one act with another gang member." (*Rodriguez*, *supra*, 55 Cal.4th at p. 1135.)

In the present case there was no substantial evidence appellant's companion was a Norteño gang member. There was no evidence he wore any gang indicia, flashed gang signs, or made comments including gang references. Even if the juvenile court could reasonably infer the companion was aware appellant was a member of the Norteños based on comments made by appellant and the gang sign flashed by appellant, that did not provide an adequate basis for the court to infer appellant's companion was a gang *member*, rather than merely a friend of appellant's or a nonmember affiliate of the gang. (See *In re Daniel C.* (2011) 195 Cal.App.4th 1350, 1362 [referring to finding that minor was a gang "affiliate" rather than a "gang member"].) Gang expert Stenger's testimony that a police detective told him a certain Norteño gang member "was identified as possibly being the subject with the machete" also did not constitute substantial evidence. Although the trial court qualified Stenger as an expert on criminal gang activity (see Evid. Code, § 720, subd. (a)), that did not encompass rendering an opinion on whether appellant's companion was a particular individual. In any event, Stenger did not render any such opinion, and the uncertain, unexplained, and uncorroborated hearsay related in his testimony did not constitute substantial evidence. (See *In re Lucero L.* (2000) 22 Cal.4th 1227, 1244-1245 ["Except in those instances recognized by statute where the reliability of hearsay is established, 'hearsay evidence alone "is insufficient to satisfy the requirement of due process of law, and mere uncorroborated hearsay does not constitute substantial evidence. [Citation.]" ' [Citations.]"].)

Because there was no substantial evidence appellant's companion was a gang member, we must reverse the juvenile court's finding sustaining the gang participation charge.[7]

C.    *Section 186.22(b)(1) Did Not Require Proof of Action in Concert*

Section 186.22(b)(1) contains two prongs: proof that a felony was committed (1) "for the benefit of, at the direction of, or in association with any criminal street gang," and (2) "with the specific intent to promote, further, or assist in any criminal conduct by gang members[.]" (§ 186.22(b)(1); see also *People v. Albillar* (2010) 51 Cal.4th 47, 59.) Appellant does not dispute there is sufficient evidence on the first prong, that the assault was committed for the benefit of the Norteños. Instead, he contends there is insufficient evidence regarding the intent prong which, he argues, requires a showing he promoted, furthered, or assisted criminal conduct by another gang member. Although *Rodriguez* was not directly confronted with the question of whether section 186.22(b)(1) requires a showing that the defendant acted in concert with other gang members, the Supreme Court made it clear that no such showing is necessary to imposition of the sentencing enhancement.

*Rodriguez* pointed out that the gang participation offense and the gang sentencing enhancement "strike at different things." (*Rodriguez*, *supra*, 55 Cal.4th at p. 1138.) In particular, section 186.22(b)(1) punishes felonies committed with the specific intent to benefit the gang, while section 186.22(a) punishes action in concert between gang members regardless of whether the felony was gang-related. (*Rodriguez*, *supra*, 55 Cal.4th at p. 1138.) In rejecting a contention it would be absurd to exempt a lone actor gang member from the coverage of section 186.22(a), the Supreme Court made it clear it did *not* interpret section 186.22(b)(1) as requiring proof of action in concert. The court stated, "A lone gang member who commits a felony will not go unpunished; he or she will be convicted of the underlying felony. Further, such a gang member would not be

---

[7] We need not and do not address appellant's argument that, with respect to the second element of section 186.22(a), "no evidence was adduced as to [appellant's] knowledge of the gang's criminal activities."

18

protected from having that felony enhanced by section 186.22(b)(1), which applies to 'any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members. . . .' Because the gang enhancement under section 186.22(b)(1) requires both that the felony be gang related and that the defendant act with a specific intent to promote, further, or assist the gang, these requirements provide a nexus to gang activity sufficient to alleviate due process concerns. [Citation.] Furthermore, we note that the lone perpetrator's punishment under the sentencing enhancement would be more substantial than that imposed for a defendant who violates section 186.22(a)." (*Rodriguez*, *supra*, 55 Cal.4th at pp. 1138-1139, fn. omitted.) In a concurrence, Justice Baxter pointed out that the relevant language in sections 186.22(a) and 186.22(b)(1) is *not* identical, justifying different conclusions with respect to whether proof of action in concert is required. (*Rodriguez*, *supra*, 55 Cal.4th at p. 1139, conc. opn. of Baxter, J.)

Even though *Rodriguez's* comments on section 186.22(b)(1) are dicta, the court's dicta generally should be followed, particularly where the comments reflect the court's considered reasoning. (*Hubbard v. Superior Court* (1997) 66 Cal.App.4th 1163, 1169 ["When the Supreme Court has conducted a thorough analysis of the issues and such analysis reflects compelling logic, its dictum should be followed."]; see also *In re Brittany M.* (1993) 19 Cal.App.4th 1396, 1403.) In the present case, the court's construction of section 186.22(b)(1) was not tangential; it pointed to the availability of the sentencing enhancement as reassurance that its interpretation of section 186.22(a) would not leave gang members who commit solo gang-related felonies inadequately punished. (*Rodriguez*, *supra*, 55 Cal.4th at p. 1139.) Because the court's statements in dicta were not "inadvertent" or "ill-considered" (*Jaramillo v. State of California* (1978) 81 Cal.App.3d 968, 971), we follow *Rodriguez* in holding that a showing of action in concert between gang members was not necessary to sustain the section 186.22(b)(1)

19

gang enhancements.[8] We affirm the juvenile court's findings sustaining the sentencing enhancements to counts one through five and seven.

III.    *Appellant's Discriminatory Enforcement Claim*

Appellant contends the findings on the gang participation count (§ 186.22(a)) and the gang sentencing enhancements (§ 186.22(b)(1)) should be reversed because enforcement of those provisions of the STEP Act (§ 186.20 et seq.) constitutes discriminatory prosecution. A claim of discriminatory prosecution "goes . . . to a defect of constitutional dimension in the initiation of the prosecution. [Citations.] The defect lies in the denial of equal protection to persons who are singled out for a prosecution that is 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' [Citation.]" (*Baluyut v. Superior Court* (1996) 12 Cal.4th 826, 831.) "[T]he defendant must prove: (1) 'that he has been deliberately singled out for prosecution on the basis of some invidious criterion:' and (2) that 'the prosecution would not have been pursued except for the discriminatory design of the prosecuting authorities.' [Citation.]" (*People v. Superior Court (Hartway)* (1977) 19 Cal.3d 338, 348.)

Appellant contends the allegations under the STEP Act constituted discriminatory prosecution because Detective Stenger had received substantial training relating only to Hispanic gangs. We conclude the claim is not cognizable on appeal because the issue was not raised in the juvenile court. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 880-881 (*Sheena K.*) The Supreme Court has directed that claims of discriminatory prosecution should be raised through a pretrial motion to dismiss. (*Murgia v. Municipal Court* (1975) 15 Cal.3d 286, 293-294, fn. 4.) Appellant argues this court can resolve his claim because

---

[8] Our holding is also supported by *People v. Hill* (2006) 142 Cal.App.4th 770, which concluded that the section 186.22(b)(1) sentencing enhancement could be imposed based on a defendant's intent to promote his own criminal conduct in the charged offense. (*Id*., at p. 774 ["There is no requirement in section 186.22, subdivision (b), that the defendant's intent to enable or promote criminal endeavors by gang members must relate to criminal activity apart from the offense defendant commits. . . . Therefore, defendant's own criminal threat qualified as the gang-related criminal activity. No further evidence on this element was necessary."].)

the forfeiture rule does not apply to "constitutional challenges that present 'pure questions of law[.]' " (*Sheena K.*, *supra*, 40 Cal.4th at p. 884.) However, appellant's claim does not present a pure question of law because there are numerous facts that are potentially relevant to his claim. For example, the record does not disclose what training Detective Stenger received regarding non-Hispanic gangs, whether other local law enforcement officers were experts on non-Hispanic gangs, whether there are local non-Hispanic gangs, whether appellant's prosecution under the STEP Act was causally related to the training received by Detective Stenger, and how often the STEP Act is used in the prosecution of any non-Hispanic gangs.

Appellant's claim of discriminatory prosecution has been forfeited. Appellant has also forfeited his claim of ineffective assistance of counsel for failure to support the claim with reasoned argument and citations to authority. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

IV. *The Juvenile Court Did Not Err in its Disposition*

Appellant contends the juvenile court abused its discretion in committing him to the Division of Juvenile Justice (DJJ)[9] because there was insufficient evidence to support a finding of probable benefit to him.

In reviewing a DJJ commitment for abuse of discretion (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396 (*Angela M.*), we must indulge all reasonable inferences to support the juvenile court's decision and will not disturb its findings if they are supported by substantial evidence. (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329-1330.) The record must demonstrate both a probable benefit to the minor by a DJJ commitment and the inappropriateness or ineffectiveness of less restrictive alternatives. (*Angela M.*, *supra*, 111 Cal.App.4th at p. 1396.) These criteria must be considered in conjunction with the purposes underlying the juvenile court law, including the "protection and safety

---

[9] The California Youth Authority (CYA) was renamed the California Department of Corrections and Rehabilitation, Division of Juvenile Justice, effective July 1, 2005. (Gov. Code, §§ 12838, 12838.5, 12838.13; see also *In re Jose T.* (2010) 191 Cal.App.4th 1142, 1145, fn. 1.)

of the public" (Welf. & Inst. Code, § 202, subd. (a)) and "care, treatment, and guidance that is consistent with [the minors'] best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances." (Welf. & Inst. Code, § 202, subd. (b).) (See *In re Jimmy P.* (1996) 50 Cal.App.4th 1679, 1684.) "Although the DJJ is normally a placement of last resort, there is no absolute rule that a DJJ commitment cannot be ordered unless less restrictive placements have been attempted. [Citations.] A DJJ commitment is not an abuse of discretion where the evidence demonstrates a probable benefit to the minor from the commitment and less restrictive alternatives would be ineffective or inappropriate. [Citation.]" (*In re M.S.* (2009) 174 Cal.App.4th 1241, 1250.) "[I]t is not merely the programs at DJJ which provide a benefit to [a] minor, but the secure setting as well." (*In re Jonathan T.* (2008) 166 Cal.App.4th 474, 486.)

In the present case, the probation report pointed out that appellant had been on probation since he was 12 years old and had committed a range of criminal offenses. The report recommended, "Due to the minor's on-going criminal behavior, complete disregard for the safety of others and for the protection of the community it is recommended the minor be removed from the community and placed in a secure facility. The [DJJ] offers this option and is recommended for this minor. With a commitment to the DJJ, the minor will have the opportunity to benefit from the reformatory and educational services offered there. While at the DJJ, the minor will be contained in a secure, highly structured and closely supervised environment. He will be given the opportunity to complete his high school education and participate in counseling to address his behaviors, the impact of crime on its victims, and other socialization and decision making skills. Hopefully the minor will take this opportunity to examine his behavior and develop appropriate ways on how to handle himself in the community." The juvenile court followed that recommendation in stating, "I do find local resources are inappropriate in rehabilitation of this young man. I find he's too dangerous. We do not have a secure placement for a length of time that would provide the rehabilitation he needs and the safety to the community. I do find the mental and physical qualifications

22

of the minor will render it probable that he'll be rehabilitated and helped by the reformatory and discipline or treatment provided by the [DJJ]."

The court's commitment of appellant to DJJ was well within its discretion. Appellant's offenses and criminal history support the court's finding that he was too dangerous to be confined in a less structured facility. The court also found that DJJ would be beneficial to appellant. Appellant disputes the court's finding that his mental qualifications made a DJJ commitment suitable. He contends the court could not have made the determination in the absence of results from a neuropsychological examination. However, the juvenile court had the benefit of a psychological examination by Dr. Good that found that appellant was competent and uncovered no evidence of significant mental deficiencies. Appellant failed to present any evidence to the court to the contrary, beyond the bare fact of his injury over seven years before the date of the disposition. Appellant has presented no authority that the court was required to obtain a neurological report before making a disposition in the circumstances of this case. Any other objections to the disposition have been forfeited for lack of support by reasoned argument with citations to authority. (*Badie v. Bank of America*, *supra*, 67 Cal.App.4th at pp. 784-785.)

## DISPOSITION

We reverse the juvenile court's jurisdictional finding on count six and remand for further proceedings consistent with this decision.

_____
SIMONS, J.

We concur.

_____
JONES, P.J.

_____
BRUINIERS, J.